**FEDERAL DEPOSIT INSURANCE COR-PORATION, Plaintiff-Appellee,**

v.

**SOVEREIGN STATE CAPITAL, INC., Defendant, and C. Arnholt Smith, Defendant-Appellant.**

No. 77–2184.

United States Court of Appeals, Ninth Circuit.

July 18, 1977.

Thomas R. Sheridan, Simon & Sheridan, Los Angeles, Cal., argued for defendant-appellant; Douglas G. Simon, Los Angeles, Cal., appeared.

Thomas W. Reavley, Bronson, Bronson & McKinnon, San Francisco, Cal., argued for plaintiff-appellee.

Before HUFSTEDLER, WRIGHT and KENNEDY, Circuit Judges.

PER CURIAM:

Smith appeals from an order holding him in civil contempt for refusing, on Fifth Amendment grounds, to answer a series of questions propounded to him in the course of supplementary proceedings conducted by his judgment creditor, appellee Federal Deposit Insurance Corporation ("FDIC"). Because we conclude that Smith was exonerated from answering by his proper assertion of the Fifth Amendment privilege, we vacate the contempt order and remand the case to the district court.

In April 1975, FDIC filed its complaint against C. Arnholt Smith and Sovereign State Capital, Inc. for fraud, money had and received, and violations of 18 U.S.C. §§ 656, 1005, and 1014. The action arose out of the collapse of the United States National Bank in San Diego and, with it, the crumbling of Smith's financial empire built upon fraudulent dealings and elaborate corporate machinations in which Smith was involved. FDIC, as receiver for United States National Bank, sought damages from Smith based on averments that Smith, as President and Chairman of the Board of United States National Bank, fraudulently and improperly approved loans to corporations that he controlled, the proceeds of which reposed with Sovereign State Capital, Inc., another Smith-controlled corporation. Upon conclusion of that trial, in which Smith did not testify, again asserting his Fifth Amendment privilege, judgment was entered against Smith and Sovereign State Capital, Inc., jointly and severally, for an amount in excess of three million dollars. Smith and Sovereign State Capital, Inc. have appealed the judgment in that action by notice of appeal filed March 18, 1977, and the appeal is presently pending in this court.

On May 2, 1977, FDIC served upon Smith and Sovereign State Capital, Inc. subpoenas *dueces tecum* compelling Smith and the custodian of records of Sovereign State Capital, Inc. to appear for a debtor's examination in the district court on May 13, 1977. On May 12, 1977, Sovereign State Capital, Inc. filed a Chapter XI petition under the bankruptcy laws in the Southern District of California. The following day, a judgment debtor's examination was held before the district court. Smith moved for a continuance of his examination based upon a pending state criminal indictment against him. He also moved that the examination be held *in camera* due to the possible prejudicial effect that his responses could have on the pending state criminal case. Both motions

were denied by the district court. Thereafter, Smith was placed under oath and he testified as a judgment debtor. He answered many of the questions put to him, but he declined to answer 20 questions, again asserting his Fifth Amendment privilege. Thereafter the district court ordered Smith to answer the questions, and Smith, acting on advice of counsel, declined to answer 20 questions after he had been ordered to do so by the district court. The district court adjudicated him in contempt and sentenced him to be imprisoned until he purged himself of contempt. The district court stayed the imprisonment to permit review by this court and we have continued the stay until disposition of the issues on appeal.

In the summer of 1974, Smith was the target of a federal Grand Jury investigation which culminated in a 25-count indictment against him on charges, among others, of conspiracy and misapplication of national bank funds. Smith and his codefendant entered pleas of *nolo contendere* to several counts of the indictment in 1975 and sentences were imposed upon them. In December 1975, while the FDIC's civil action was pending, the San Diego County Grand Jury returned a 58-count state court indictment against Smith and another for conspiracy, grand theft, income tax evasion, subscribing a false tax return, and misapplication of bank funds. On March 23, 1976, the Grand Jury amended the indictment to charge six more counts, including counts of income tax evasion for two years, grand theft, and forgery. Smith and his codefendant were arraigned in San Diego County Superior Court on the indictment and pretrial proceedings were begun. A copy of the very lengthy state indictment was filed with the district court at the debtor's examination on May 13, 1977. Without going into detail about each of the counts of the state indictment, we can summarize them as follows: Counts 1 and 2 charge violations of California Revenue and Taxation Code §§ 19405 and 19406, concerning charges that Smith evaded California income tax and signed false and fraudulent tax returns in the year 1971. Counts 3 through 10 allege that Smith stole personal property of various Smith-controlled corporations. Among the alleged victims of these grand thefts were Sovereign State Capital, Inc., National Marine Terminal, Inc., Missouri Western Realty Corp., Westgate-California Corp., Westward Realty Company, and British Columbia Investment Company. Count 11 is a conspiracy count charging that between June 1, 1972 and May 25, 1973, Smith and his codefendant conspired to permit grand theft in violation of California Penal Code § 182. In connection with the conspiracy count, the indictment alleges 121 overt acts committed in furtherance of the conspiracy. Counts 12 through 35 charge Smith with misapplication of bank funds in violation of California Financial Code § 3361. Counts 36 through 56 charge Smith with grand theft in violation of California Penal Code § 487.1, naming as victims certain companies allegedly controlled by or associated with Smith. Count 57 charges Smith with forgery of a check on June 12, 1973. Count 58 charges Smith with grand theft on June 14, 1973 from Roberts Farms, Inc. Counts 59 and 60 charge Smith with violations of California Revenue and Taxation Code §§ 19405 and 19406. Count 59 charges Smith with filing false income tax returns for the year 1973. Count 60, also dealing with the 1973 California individual tax return for Smith, charges him with signing a false and fraudulent return with intent to evade California individual income tax. Counts 61 and 63 charge him with grand theft, on July 17, 1973, and February 9, 1974, respectively, from Sovereign State Capital, Inc. Count 62 charges Smith with making and subscribing a 1974 California individual tax income tax return which he did not believe to be true. Count 64 charges Smith with committing grand theft from the San Diego Padres, Inc. The indictment contains the names of 64 witnesses whose testimony was taken by the San Diego County Grand Jury, in returning the state indictment, including Myra Jean Smith and Carol Smith Shannon, about whom Smith was asked at the debtor's examination in question.

Following extensive pretrial hearings in the state criminal case, many of the counts

in the indictment have been dismissed by the trial court. The tax counts remain, and the state prosecutor has announced his intent to appeal dismissal of counts 12 through 55.

The 20 questions which Smith declined to answer are as follows:

"1. Are you presently involved in any business activities?

"2. Do you presently have any involvement in the business affairs of Valley Lane Farms?

"3. Do you presently have any involvement in the business affairs of Underwriters Insurance Agency of America?

"4. Do you presently have any involvement in the business affairs of United States Holding Company?

"5. Do you presently have any involvement in the business affairs of Southcoast Financial Corporation?

"6. Do you presently have any involvement in the business affairs of San Juan, Inc.?

"7. Do you presently have any involvement in the business affairs of Executive Suite, Inc.?

"8. Do you presently have any involvement in the business affairs of Carol Smith Shannon?

"9. Do you presently have any involvement in the business affairs of Myra Jean Smith?

"10. Do you presently have any involvement in the business affairs of either of your two grandchildren?

"11. Who have you borrowed money from?

"12. Have you borrowed money within the past three years from anyone other than Sovereign State Capital, National Marine Terminal, Missouri Western Realty, Westgate-California Corporation, Westward Realty, or BCIC?

"13. Does your daughter, Carol Shannon, contribute any money to your support?

"14. Does your daughter-in-law, Myra Jean Smith, contribute to your support in any way?

"15. Do either of your two grandchildren contribute to your support?

"16. Are you an officer or director of any corporation?

"17. Do you own in your own name or jointly any type of bank account?

"18. Do you own any insurance policies?

"19. Do you have an accountant?

"20. Are you the beneficiary of any trust?"

"To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." (*Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).) The privilege extends not only to answers that would in themselves incriminate but also to those which "would furnish a link in the chain of evidence needed to prosecute the claimant . . . ." (*Id.* at 486, 71 S.Ct. at 818.) We do not need to decide in this case, and we do not decide, whether *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972), imposed a stricter test than did *Hoffman*, because we are convinced that if a more stringent test was imposed by *Zicarelli*, Smith met the more restrictive standard.[1] (*United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (opinion of Burger, C. J.).)

 We are not asked to speculate whether the witness might be exposed to a criminal prosecution in jurisdiction other than that in which the testimony is sought to be compelled. (*Contrast Zicarelli v. New Jersey State Commission of Investigation, supra*, 406 U.S. at 478, 479, n. 17, 92 S.Ct. 1670 (witness' fear of prosecution by a foreign country "remote").) Smith was being

---

1. The district court recognized that in rejecting Smith's Fifth Amendment claim, it was calling a close and difficult question.

actively prosecuted by the State of California. Smith was not a witness who had been immunized. (*Contrast Zicarelli v. New Jersey State Commission of Investigation, supra.*) Here, as in *Hoffman*, the answers to each and all of these 20 questions "could easily have required answers that would forge links in a chain of facts imperiling [Smith] with conviction of a [state] crime." (*Hoffman v. United States, supra,* 341 U.S. at 488, 71 S.Ct. at 819.) Further, we find that requiring Smith to answer would subject him to a real danger of incrimination. (*See United States v. Mandujano, supra; Zicarelli v. New Jersey State Commission of Investigation, supra.*) One question necessarily leads to another, and Smith was not required to decide at his peril the moment at which a responsive answer might spell waiver of his privilege against self-incrimination before his declination to respond on Fifth Amendment grounds. (*See Rogers v. United States,* 340 U.S. 367, 372–74, 71 S.Ct. 438, 95 L.Ed. 344 (1951).)

Smith's present financial condition, his connections with the various corporations named, and his relationships and dealings with the individuals about whom he was questioned, could permit a prosecutor to trace assets back to the alleged unlawful acts charged against him in the pending state prosecution. The same evidence could reveal facts of the alleged crimes, including facts bearing upon knowledge and intent. Woven throughout the state charges are claims that Smith used corporations that he controlled in sham transactions from which he secured money for his own purposes. Knowledge about how Smith has utilized controlled corporations since 1973 may supply evidence of his corporate manipulations both before and after that date which would also supply links in the chain of evidence connecting him with the criminal charges pending against him.

In supporting his Fifth Amendment claim of privilege, Smith is not "required to prove the hazard in the sense in which a claim is usually required to be established in court, [otherwise] he would be compelled to surrender the very protection which the privilege is designed to guarantee." (*Hoffman v. United States, supra,* 341 U.S. at 486, 71 S.Ct. at 818. *Cf. Albertson v. Subversive Activities Control Board,* 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965); *Shendal v. United States,* 312 F.2d 564 (9th Cir. 1963).) The privilege applies to testimony which may incriminate the witness under either state or federal law. (*E. g., Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Murphy v. Waterfront Commission of New York,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).)

The contempt order is vacated and the cause is remanded to the district court with directions to dismiss the contempt.