**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert C. JONES and Dona Jones,
Defendants-Appellants.**

Nos. 81–2129, 82–1389.

United States Court of Appeals,
Tenth Circuit.

March 29, 1983.

---

Robert W. Brown (Thomas M. Bradshaw, also of Hoskins, King, McGannon, Hahn & Hurwitz, Kansas City, Missouri; and Edward M. Boddington, Jr. of Boddington & Brown, Kansas City, Kansas, with him on briefs) for defendants-appellants.

Murray S. Horwitz (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and William A. Whitledge, and Jim J. Marquez, U.S. Atty., with him on briefs) Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge. .

Robert C. Jones and Dona Jones, husband and wife, appeal district court orders holding each of them in contempt of court for refusing to answer questions concerning their assets and financial affairs at separate judgment debtor examinations. The Joneses had asserted their Fifth Amendment privilege against compulsory self-incrimination in refusing to answer the questions. The district court's contempt rulings were based on its conclusion that the Joneses did "not have reasonable cause to apprehend danger from a direct answer to the questions asked." The only issue on appeal is whether the district court's conclusion was proper.

In June 1977 the United States obtained judgment against the Joneses for income tax deficiencies for the years 1963 through 1969. By 1981 the government had collected only a small part of the money. It therefore asked Robert Jones to appear at a hearing in aid of execution before a magistrate pursuant to the rules of the Kansas district court and Fed.R.Civ.P. 69. At the hearing, Jones answered certain questions, but refused to answer almost all questions concerning the sources and amounts of his income and the nature and location of his assets[1] on the ground that the answers

---

1. The questions Robert Jones refused to answer were:

1. "What is your present monthly income."
2. "Other than income earned from your law practice, do you earn any income from any other source, and income can be defined as it is under the Internal Revenue Laws."
3. "Would you please tell me how many and the location of any checking accounts that you presently have."
4. "I would like to know the location and number of savings accounts that you presently have in your or your wife's name."
5. "Mr. Jones, would you please itemize to me any debts owed to you presently."

might incriminate him. On the recommendation of the magistrate, the district court held Jones in contempt for his refusal to answer. Later that year a similar hearing was conducted to interrogate Dona Jones. She refused to answer similar questions on the ground that the answers might incriminate her. On the recommendation of the magistrate, the district court held Dona Jones in contempt. Both Robert and Dona Jones appeal the contempt citations. Because the appeals are interrelated and present substantially similar questions we have consolidated them.

## I

■ Robert Jones claims that revealing the nature and location of his assets could provide incriminating evidence of two separate crimes. The first is making a false statement to a federal agent, a violation of 18 U.S.C. § 1001. Approximately two weeks before the judgment debtor examination, Jones was interviewed by the Internal Revenue Service (IRS) about his ability to pay the underlying judgment. While he was not explicit at trial or on appeal, he evidently contends that truthful answers to the questions at issue could conflict with statements he made in that interview and thus expose him to prosecution under § 1001. We do not agree. The IRS agent who conducted the interview, Robert B. Bates, filed an affidavit stating that Jones had "refused to provide any information to me about the nature or locations of his assets and has to this date never provided me with any such information." Jones did not dispute the accuracy of this affidavit at the hearing and does not do so here. The only arguments presented by his attorney were that no record of the interview had been made and that Jones' attorney had at one time represented another person who was contradicted in court by prior statements made to IRS officials.

These arguments are not relevant. The lack of a record of the interview is unimportant when neither side disputes that nothing was said. Since Jones gave no answers during the interview, answers given during the judgment debtor hearing could not contradict interview answers and hence could not form a basis for establishing a violation of 18 U.S.C. § 1001. The court correctly decided that Jones had no reasonable basis to fear that answering the questions would tend to provide evidence of a violation of § 1001.[2]

## II

Robert Jones next contends that answering the questions could tend to incriminate him for the crime of attempted tax evasion under I.R.C. § 7201. We believe a reasonable basis for Jones' fear of criminal prosecution exists. Hence, the magistrate erred in recommending that Jones be held in contempt and the district court abused its discretion in issuing the contempt order.

■ The privilege against self-incrimination protects the person claiming it from being compelled to give "answers that would in themselves support a conviction" or that "would furnish a link in the chain of evidence needed to prosecute the claimant" for a crime. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The privilege extends to questions propounded in a civil action, whether the claimant is a party or a witness. *Maness v. Myers*, 419 U.S. 449, 464, 95 S.Ct. 584, 594, 42 L.Ed.2d 574 (1975); *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The individual asserting the privilege is not "required to prove the hazard [of incrimination] in the sense in which a claim is usually required to be established in court," *Hoff-*

6. "Mr. Jones, would you please itemize any judgments you presently have that are owed to you."

7. "'Mr. Jones, would you please inform the Court of the location by address or legal description of any real property owned by you."

8. "Tell me the amount of gross income reported on that [1979 income tax] return."

2. Dona Jones was not interviewed by the IRS prior to her judgment debtor hearing and therefore does not base her refusal to answer on fear of incrimination under 18 U.S.C. § 1001.

*man,* 341 U.S. at 486, 71 ·S.Ct. at 818; rather the privilege may validly be asserted whenever "the witness has reasonable cause to apprehend danger from a direct answer." *Id.* That a witness actually fears incrimination from answering questions is not enough. The fear must be reasonable in light of the witness' specific circumstances, the content of the questions, and the setting in which the questions are asked. *Id.; accord Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 480, 92 S.Ct. 1670, 1676, 32 L.Ed.2d 234 (1972); *Malloy v. Hogan,* 378 U.S. 1, 11–14, 84 S.Ct. 1489, 1495–97, 12 L.Ed.2d 653 (1964). The trial court is to evaluate the incriminatory potential of questions asked. *Hoffman,* 341 U.S. at 487, 71 S.Ct. at 818. The claim of privilege cannot be sustained if the fear of self-incrimination rests on "remote and speculative possibilities"; the privilege protects only against "real dangers." *Zicarelli,* 406 U.S. at 478, 92 S.Ct. at 1675.

■ Jones and two law partners previously had been investigated for tax fraud for the years 1958 through 1969. That investigation culminated in the conviction of one of the partners for conspiracy to commit tax fraud. Jones and the other partner were given use immunity in exchange for their testimony in the case and were not prosecuted. However, the IRS obtained the civil judgment against the Joneses that underlies this action as a result of that investigation. On August 3, 1981, the government filed another civil complaint against the Joneses, seeking a judgment for tax deficiencies and assessments for the tax years 1973 through 1979. The Joneses' counsel characterizes these proceedings—the criminal investigation, the prior civil action, the judgment debtor hearing, and the August 1981 civil action—as "ten years of investigation." The judgment debtor hearing at issue in this case was to aid collection of the judgment concerning tax years 1963 through 1969. Nevertheless, because the IRS was pursuing a civil action against Jones for tax deficiencies and assessments for 1973 through 1979, Jones had ample reason to believe that the IRS was particularly interested in his financial transactions.

The IRS' institutional focus was turned to his tax affairs for 1973 through 1979 at least. *Cf. Hoffman,* 341 U.S. at 489, 71 S.Ct. at 819 (various officials and government bodies had focused attention on Hoffman's underworld activities, officially and in the press). The initiation of tax deficiency litigation against Jones indicates that the IRS believes that he did not properly report his income. If the income was improperly reported, questions concerning the nature and location of Jones' assets are potentially incriminating. *See Mackey v. United States,* 401 U.S. 667, 669, 91 S.Ct. 1160, 1161–62, 28 L.Ed.2d 404 (1971); *United States v. Pierce,* 561 F.2d 735, 743–44 (9th Cir.1977) (Hufstedler, J., dissenting), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1486, 55 L.Ed.2d 516 (1978).

This case is close factually to *FDIC v. Sovereign State Capital, Inc.,* 557 F.2d 683 (9th Cir.1977), which also involved assertion of the Fifth Amendment privilege in the context of a judgment debtor hearing. In that case the FDIC had obtained a judgment against C. Arnholt Smith in connection with a bank collapse resulting from the crumbling of Smith's financial empire. Smith had pleaded nolo contendere to various federal conspiracy and fraud charges arising from the collapse. At the time the FDIC requested a Rule 69 judgment debtor hearing in aid of collecting its judgment, Smith was under indictment on state tax and fraud charges. The FDIC sought answers to various questions concerning Smith's financial dealings. When Smith refused to answer twenty specific questions, asserting his Fifth Amendment privilege, the district court held him in contempt. The Ninth Circuit reversed, holding that Smith's answers could form links in a chain of evidence leading to conviction of the pending tax and fraud charges or future charges against him. Among the questions the court held Smith could validly refuse to answer were: "Do you own in your own name or jointly any type of bank account?"; "Do you own any insurance policies?"; and "Do you have an accountant?" *Id.* at 686.

If Robert Jones were under criminal investigation or indictment, the reasonableness of his fear that the information sought from his testimony might be used against him would be readily apparent. We think his fear is equally real in the instant case, because he is being prosecuted civilly for failure to properly pay income taxes. Answers to questions concerning his financial affairs could easily provide links in a chain of evidence on criminal charges of attempt to evade payment of taxes.[3]

In ruling against Robert Jones' Fifth Amendment claim the magistrate and district judge appear to have been strongly influenced by IRS Agent Frank Campbell's affidavit that no criminal investigation of the Joneses was pending and no criminal charges against them had been referred to the Justice Department. Such an affidavit is commonly relied upon to support the validity of IRS administrative summonses, particularly to obtain from banks copies of checks taxpayers have written. However, the issue in summons enforcement cases is not the privilege against self-incrimination, but the intent of Congress in enacting I.R.C. § 7602 to permit the use of such administrative summonses. *See United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).[4] The Supreme Court has recognized that § 7602, as interpreted by *LaSalle,* places an evidentiary duty upon a summons recipient, but that this duty is "limited ... by relevance and privilege." *United States v. Euge,* 444 U.S. 707, 712, 712–19, 100 S.Ct. 874, 878, 878–82, 63 L.Ed.2d 141 (1980). The refusal on grounds of privilege by one who has received a summons valid under *LaSalle* to answer specific questions or produce specific documents is evaluated not under *LaSalle* but under traditional Fifth Amendment analysis. *See United States v. Davis,* 636 F.2d 1028, 1038–39 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).[5]

3. The government relies on *Capitol Products Corp. v. Hernon,* 457 F.2d 541 (8th Cir.1972), to support the contempt citation. In that case, the defendant at a judgment debtor hearing refused to answer questions concerning his financial affairs. While the opinion does not make clear the factual setting, at the hearing the defendant apparently did not give any reasons for his refusal to answer, but on appeal suggested vaguely that "the disclosure of assets may, in some instances, lead to the discovery of evidence of violation of tax laws ...." *Id.* at 543. On this record the court refused to uphold the trial court's order compelling the defendant to answer only 2 of the 105 questions asked him. However, the court did not expressly approve compelling the defendant to answer all of the questions. Recognizing that "[t]he defendant would not be required to answer even an innocuous question if the setting suggested a substantial and real hazard of incrimination[,]" *id.* at 543 n. 3, the court remanded for an examination of the incriminatory potential of each question, *id.* at 544. We do not consider *Capitol Products* inconsistent with our holding in this case. The Eighth Circuit panel essentially affirmed the rule that, when the content of the statement does not alone reveal its incriminatory potential, the context in which it is asked must reveal such potential if the privilege is to be validly asserted. The *Capitol Products* court found neither aspect present. In the instant case, there was enough evidence to alert the court to the incriminatory potential of questions probing Jones' financial status.

4. Even though the rule formulated in *LaSalle* is not directly applicable in this case, the purpose underlying its formulation is relevant. The Court made clear that the IRS cannot use § 7602 summonses solely for purposes of criminal investigation; it must be pursuing a determination of civil tax liability. 437 U.S. at 316–18, 98 S.Ct. at 2367–68. However, the Court recognized that the civil and criminal aspects of IRS investigations are "inherently intertwined." *Id.* at 308–18, 98 S.Ct. at 2363–68. The Court's line, drawn at recommendation to the Justice Department that it institute criminal proceedings, was intended to accommodate the practicalities of this overlap between civil and criminal investigations to the purposes of the § 7602 summons power.

5. The instant situation is also unlike the case in which a taxpayer has tried to rely upon the Fifth Amendment to justify failure to file an income tax return, *see, e.g., United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), or to justify filing a tax return form containing essentially no information, *see, e.g., United States v. Irwin,* 561 F.2d 198, 200 (10th Cir.1977). The Fifth Amendment must be claimed as to specific questions. *Garner v. United States,* 424 U.S. 648, 662 & n. 16, 96 S.Ct. 1178, 1186 & n. 16, 47 L.Ed.2d 370 (1976);

Once the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted. *See In re Corrugated Container Antitrust Litigation (Culy)*, 662 F.2d 875, 884–85 & n. 20 (D.C.Cir.1981); *In re Corrugated Container Antitrust Litigation (Franey)*, 620 F.2d 1086, 1091–92 (5th Cir.), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1980); *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871–72 (7th Cir.1979); *United States v. Yurasovich*, 580 F.2d 1212, 1215–16 (3d Cir.1978); *In re Master Key Litigation*, 507 F.2d 292, 293 (9th Cir.1974); *United States v. Johnson*, 488 F.2d 1206, 1209 & n. 2 (1st Cir.1973); *United States v. Miranti*, 253 F.2d 135, 138–39 (2d Cir.1958). Agent Campbell's affidavit that no criminal prosecution is underway is less than a promise there will be no prosecution. *See In re Corrugated Container Antitrust Litigation (Culy)*, 662 F.2d 875, 886–88 (D.C.Cir.1981); *In re Corrugated Container Antitrust Litigation (Conboy)*, 661 F.2d 1145, 1152 (7th Cir.1981) (en banc), *aff'd on other grounds sub nom. Pillsbury Co. v. Conboy*, —— U.S. ——, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983); *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 870 (7th Cir.1979); *In re Brogna*, 589 F.2d 24, 28 (1st

Cir.1978); *United States v. Johnson*, 488 F.2d 1206, 1209 n. 2 (1st Cir.1973). The government might learn something from the questions it asks that causes it to abandon its present intention and initiate criminal prosecution of Robert or Dona Jones. If the government desires information protected from compelled disclosure solely to help it collect the prior civil judgment, it should be willing to grant Jones immunity from prosecution in order to obtain that information. If the government cannot at this time so confine the use to which it desires to put privileged information, it must obtain the information by some means other than compelled self-disclosure.

Facilitating the collection of judgments through Rule 69 proceedings serves important interests that should not be defeated by frivolous claims of privilege. At the same time, claims of privilege must be carefully and sympathetically evaluated to determine whether the information sought could be incriminating. The interest in collecting judgments cannot override the interest in protecting legitimate Fifth Amendment claims. *See generally Lefkowitz v. Turley*, 414 U.S. 70, 78–79, 94 S.Ct. 316, 322–23, 38 L.Ed.2d 274 (1973).[6]

---

*United States v. Riewe*, 676 F.2d 418, 420 n. 1 (10th Cir.1982); *United States v. Neff*, 615 F.2d 1235, 1238–41 (9th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). The record demonstrates that Robert Jones did not indiscriminately refuse to answer questions propounded to him at the hearing. Jones appears to have chosen carefully which questions to answer and which to refuse. He answered some questions that might appear to be potentially incriminating but to which nonincriminating truthful answers were possible—questions, for example, concerning Dona Jones' income. "As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination." *Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). *Accord Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 479–81, 92 S.Ct. 1670, 1675–77, 32 L.Ed.2d 234 (1972) (refusal to answer must be carefully tailored to the question asked). *But cf. United States v. Yurasovich*, 580 F.2d 1212, 1220–21 (3d Cir.1978) (refusal to answer any questions may be acceptable response to order to answer

all questions when questions not specified in advance). Thus, the magistrate in this case was correct in his procedure when he conscientiously ruled on the incriminating nature of each question separately, even though we hold that he erred in his conclusions.

**6.** While we hold the circumstance of a civil prosecution in the context of the instant case is sufficient to justify the Joneses' claim of the Fifth Amendment privilege, we recognize the rule that a witness claiming the privilege must establish that the questions call for potentially incriminating answers. When the circumstances surrounding the questions fail to indicate that the witness' answers would be incriminating, the claim can be disposed of easily on that basis. *See, e.g., Baker v. Limber*, 647 F.2d 912, 919 (9th Cir.1981) (witness must show some connection between questions asked at judgment debtor hearing and a specific crime); *Brunswick Corp. v. Doff*, 638 F.2d 108, 110 (9th Cir.1981) (bald assertion of Fifth Amendment claim at judgment debtor hearing not sufficient to resist discovery of assets), *cert. denied*, 454 U.S. 862, 102 S.Ct. 319, 70 L.Ed.2d 161 (1981);

III

Dona Jones' claim of the privilege against self-incrimination derives entirely from her husband's claim. She was never investigated or interviewed by the IRS prior to her judgment debtor hearing. She and her husband filed joint returns during the tax years in issue, however, and she argues that answering the questions will place her in the same jeopardy as her husband.

The analysis we have applied to questions asked of Robert Jones also applies to those asked of Dona Jones. While she was not previously criminally investigated by the IRS, she was the subject of the prior and current civil actions. Since she appears to have always filed joint tax returns with her husband, Dona Jones could reasonably fear prosecution under I.R.C. § 7201 when questions posed to her demanded answers that could form a link in a chain of evidence of attempted tax evasion. *See United States v. Drape,* 668 F.2d 22, 25–26 (1st Cir.1982); *Katz v. United States,* 321 F.2d 7 (1st Cir.), *cert. denied,* 375 U.S. 903, 84 S.Ct. 193, 11 L.Ed.2d 144 (1963). Questions that would tend to incriminate her husband also would tend to incriminate her. Nearly all of the questions Dona Jones refused to answer dealt with the Joneses' income and ownership of property and were properly subject to the claim of privilege. *Compare FDIC v. Sovereign State Capital, Inc.,* 557 F.2d 683, 686 (9th Cir.1977).

We therefore vacate the contempt orders against both Robert and Dona Jones and remand for further proceedings consistent herewith.

*Martin-Trigona v. Gouletas,* 634 F.2d 354, 360 (7th Cir.) (witness was unable to show "[s]ome nexus between the risk of criminal conviction and the information requested," and none was apparent from the circumstances), *cert. denied,* 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980); *Capitol Products Corp. v. Hernon,* 457 F.2d 541 (8th Cir.1972).