UNITED STATE of America,
Petitioner,

v.

Kenneth B. RINEHART, Respondent.

No.  CIV–07–1301–HE.

United States District Court,
W.D. Oklahoma.

Jan. 25, 2008.

1335

Daniel A. Applegate, Washington, DC, for Petitioner.

Stephen L. Jones, Jones Otjen Davis & Nixon, Enid, OK, for Respondent.

**ORDER**

JOE HEATON, District Judge.

The United States filed this case seeking enforcement of two administrative summonses issued by the Internal Revenue Service and directed to respondent Kenneth B. Rinehart ("Rinehart" hereafter). One is directed to him personally. The other is directed to him in his capacity as President of Unta Bent Inc. ("Unta Bent" hereafter), a corporation doing business in Oklahoma. The government's petition indicates the information sought is in connection with its investigation of the tax liability of Rinehart and Unta Bent for tax year 2003.[1] The summonses seek various books, records and other documents related to that tax year and also the oral testimony of Rinehart as to those items.

Rinehart objects to enforcement of the summonses on the grounds that the investigation is not being pursued in good faith and that the requirements of 26 U.S.C. § 7602, pursuant to which the summonses were issued, have therefore not been met. He further argues that any compelled testimony or production of records by him would violate his Fifth Amendment privilege against self-incrimination. He notes there are state criminal charges pending against him in the Oklahoma courts,[2] that state officials are also investigating his use of state automobiles, and that there is the potential for state or federal criminal charges as to his tax liability.

The court conducted a hearing on the government's petition and Rinehart's objections to it on January 7, 2008, and has

---

1. Although the particular summonses involved here involve information related to the 2003 tax year, the government states that it has expanded its investigation to include tax years 2004 and 2005.

2. Rinehart, a county commissioner for Oklahoma County and former member of the city council of Oklahoma City, is charged with others in connection with an alleged scheme to evade Oklahoma's campaign contribution limits. The charges against Rinehart include conspiracy, knowing acceptance of an illegal contribution, money laundering and perjury, all in connection with his 2004 election as county commissioner.

also received written submissions from the parties.

## DISCUSSION

■ The threshold inquiry is whether the government has made the necessary showing with respect to its compliance with 26 U.S.C. § 7602 and the standards generally applicable to enforcement of administrative summonses like those involved here. For the reasons stated more fully at the hearing, the court concludes the government has met its burden. It established that it seeks the identified information in connection with the 2003 tax liability of Rinehart and Unta Bent, that the information sought is relevant to that purpose, that the information sought is not already in its possession,[3] and that proper administrative procedures were followed. *See Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir.1987). The evidence established there has not been a referral of this matter to the Department of Justice, within the meaning of 26 U.S.C. § 7602(d). As a result, use of administrative summonses like those involved here is proper so long as the Internal Revenue Service is using its summons authority in good faith. *United States v. LaSalle Nat. Bank*, 437 U.S. 298, 313, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).

■ Respondent argues the IRS is using its authority in bad faith.[4] He alludes to some eighteen hours of interviews that he has voluntarily submitted to and the information he has previously produced, suggesting that the government's present request is overkill in light of the amounts in issue and that it borders on harassment for the government to now seek information he previously made available to the IRS agent, but which was not then copied by him. He also argues that the circumstances suggest some improper coordination of efforts between the IRS investigation and the pending state criminal charges.

Respondent's suggestions of bad faith on the part of the government are unpersuasive. The suggestion that the scope of the IRS's present effort is out of proportion to the taxes due or potentially due puts the cart before the horse, as the purpose of the inquiry is to determine what amounts were in fact owed for the year(s) in question. The fact that the agent previously had access to and examined, without copying, documents which it now wants copies of does not, in the circumstances here, prove some sort of harassment. The normal progress of an investigation may show particular information to be pertinent or useful even though, at an earlier point in the investigation, it was not thought to be important. Finally, the court concludes respondent's suggestion of timing similarities between various actions by the IRS agent and the Oklahoma state authorities is insufficient to show improper collusion between state and federal authorities or to rebut the agent's testimony that no such coordination has occurred. Respondent's showing is insufficient to establish bad faith on the part of the government under the standards set out in *LaSalle*.[5] Accordingly, as noted at the hearing, the court

3. Although the government's identification of the information sought is somewhat unwieldy—various categories of information sought less various categories of information it already has—the court concludes it has sufficiently identified what it already has. Further, as the information sought reasonably relates to the potential tax liability of the taxpayers for the indicated year and is otherwise sufficiently identified, the summonses do not contravene Fourth Amendment principles as suggested in respondent's brief, pp. 16–7.

4. Once the government has made its initial showing, the burden shifts to the taxpayer to show that enforcement of the summons would constitute an abuse of process or that, in issuing the summons, the IRS lacks "institutional good faith." *Anaya*, 815 F.2d at 1377.

5. *LaSalle's* concern with the use of an IRS administrative summons to advance a crimi-

concludes the government has established its entitlement to enforcement of the summonses involved here, subject to resolution of the issues related to Rinehart's privilege against self-incrimination.

■■■ The Fifth Amendment protects a person from being compelled in any criminal case to be a "witness" against himself or herself. The reference to "witness" limits the scope of the protection to incriminating communications which are testimonial in nature. *United States v. Hubbell*, 530 U.S. 27, 34, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000). In general, the privilege protects a person from being compelled to give answers that would either support a conviction in themselves or which "would furnish a link in the chain of evidence needed to prosecute the claimant" for a crime. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). An individual asserting the privilege is not required to prove the hazard of incrimination in the same sense as claims are usually required to be established in court, but can validly assert the privilege when "the witness has reasonable cause to apprehend danger from a direct answer." *Id.* The fear of self-incrimination must be based on more than "remote and speculative possibilities" and protects only against "real dangers." *Zicarelli v. New Jersey St. Com. of Invest.*, 406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *see also United States v. Schmidt*, 816 F.2d 1477, 1481 (10th Cir.1987); *United States v. Jones*, 703 F.2d 473, 476 (10th Cir.1983).

■■■ In the context of attempts to secure documentary evidence, a person may be required to produce documents even though they contain incriminating facts or information, where the creation of the documents was not "compelled" within the meaning of the privilege. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) (involving IRS summonses seeking work papers used in preparation of tax returns). However, even where the documents themselves are not privileged, the "act of production" of documents may be sufficiently testimonial in nature as to make the privilege applicable to the production. *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). The circumstances may be such that, by producing the documents themselves, a witness is admitting the papers existed, were in his possession or control, and were authentic. *United States v. Hubbell*, 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000). These general principles guide the court's analysis of respondent's claims of privilege in this case.

As noted above, the summonses involved here seek certain corporate records of Unta Bent, records of Rinehart, and Rinehart's testimony as to both. Only with respect to production of the corporate records of Unta Bent does the Fifth Amendment privilege issue lend itself to categorical determination.

■■■ The law is settled that the contents of corporate records are not privileged. *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). A corporation does not have a Fifth Amendment

---

nal tax investigation has been superseded, at least in part, by Congress' amendment of 26 U.S.C. § 7602, which now permits, up to the point of a Department of Justice referral, its use in investigating "any offense" involving the federal tax laws. However, *LaSalle's* discussion of bad faith continues to have applica-

tion to situations where the IRS is alleged to have used the summons as a means of harassment or as a means of gathering information for some other law enforcement entity. *See Pickel v. United States*, 746 F.2d 176 (3rd Cir.1984).

privilege against self-incrimination. *Braswell v. United States,* 487 U.S. 99, 105, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). And as the Supreme Court concluded in *Braswell,*[6] a custodian of corporate records may not resist the production of corporate records even if those records would tend to incriminate the custodian. This is so regardless of whether the compulsory process is directed to the corporation or, as here, to a particular individual in his capacity as a custodian. *Braswell,* 487 U.S. at 108–9, 108 S.Ct. 2284. Further, because corporate records are involved, the rule (i.e. the nonapplicability of privilege) applies notwithstanding the concern that the act of producing the records might involve aspects of testimonial incrimination. *Braswell,* 487 U.S. at 104, 108 S.Ct. 2284 (noting the different result if personal or sole proprietorship records were involved). Rinehart argues that this latter conclusion has been supplanted by the Supreme Court's later decision in *United States v. Hubbell,* 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000), which addressed the testimonial aspects of the compelled production of documents. *Hubbell,* however, did not focus on corporate records and the court is unpersuaded that *Hubbell* effected any change in the law applicable to their production. *See Armstrong v. Guccione,* 470 F.3d 89, 98 (2nd Cir.2006) (rejecting the suggestion that *Hubbell* altered *Braswell's* holding). Accordingly, neither Rinehart nor Unta Bent has a privilege to refuse to produce corporate records of Unta Bent which are within the scope of the summons to Rinehart in his capacity as corporate president. The situation with respect to the other information sought, i.e. Rinehart's personal records and his testimony in both his individual and representative capacities, cannot be definitively resolved in the present posture of the case. It is true, as the government argues, that a witness may not assert a blanket claim of privilege to prevent testifying or producing documents, based on a generalized fear of criminal prosecution (citing *Schmidt,* 816 F.2d at 1481–82). It is also true that Rinehart presently has pending against him specific state criminal charges which overlap, at least in part, circumstances related to information that is within the scope of the summonses at issue. This circumstance makes clear that respondent's fear of criminal prosecution is not merely fanciful or speculative, but a reality, and has particular force with respect to any compelled testimony on his part.[7] As in *Jones,* it is entirely possible that Rinehart's answers to questions concerning his financial affairs "could easily provide links in a chain of evidence on criminal charges...." *Jones,* 703 F.2d at 477.[8] It is, of course, also

6. *Braswell* traced the development of the "collective entity rule," the doctrine which recognizes that, for Fifth Amendment purposes, corporations and other collective entities are treated differently from individuals.

7. *See United States v. Jones,* 703 F.2d at 477 ("If Robert Jones were under criminal investigation or indictment, the reasonableness of his fear that the information sought from his testimony might be used against him would be readily apparent.").

8. On the present record, the court is unpersuaded by the government's suggestion that Rinehart's Fifth Amendment privilege cannot extend to potential federal tax violations. While the possibility of federal tax charges is certainly less specific and pressing than the state criminal charges, which are presently pending, the possibility of federal charges appears to be something more than speculative. For example, the court notes defense counsel's assertion that the government may believe Rinehart to have diverted Unta Bent income to his campaign accounts, Jones Affidavit, ¶ 3, which raises not only the possibility of criminal tax charges but also illustrates the difficulty in separating matters applicable to potential tax issues from those in the pending

possible that some testimony or documents will be so unrelated to pending or potential charges that Rinehart's Fifth Amendment privilege will not extend to them.[9] In any event, the determination of privilege issues as to particular testimony or particular documents will have to await a more specific showing and discussion before the court. *See Schmidt*, 816 F.2d at 1482 ("At the appropriate time, appellants may interpose their claim of Fifth Amendment privilege pertaining to specific documents and in response to individual questions upon their reasonable belief that a compulsory response by them to these testimonial matters will pose a substantial and real hazard of subjecting them to criminal liability.").

In determining the course of further proceedings pursuant to the summonses, the court would expect the parties to give consideration to, among other pertinent factors, the particular sensitivity of privilege issues as to potential testimony by the respondent, the degree of overlap between the state proceedings and the present information requests, the necessity for further individual document production in light of the corporate record production ordered here, and the potential waiver of any applicable privilege claim by reason of prior production of the particular documents.

## CONCLUSION

The court having concluded that the government has made a sufficient showing with respect to its compliance with 26 U.S.C. § 7602 and there being no basis for quashing the summonses in general, the government's petition to enforce Internal

Revenue Service summonses [Doc. # 1] is **GRANTED.** Respondent Rinehart is directed to comply with the summons directed to him in his capacity as president of Unta Bent insofar as it seeks corporate records. Respondent Rinehart is directed to comply with the summons directed to him in his individual capacity and with the representative summons insofar as it seeks testimony, subject to his right to object to particular questions and/or document production based on a specific assertion of Fifth Amendment privilege. Respondent is directed to appear before Revenue Agent Driskill or other officer designated by the IRS to conduct the further inquiry and to produce the identified documents. Such appearance and production shall occur within *forty-five (45) days* from entry of this order, with the particular times and place of appearance and production to be determined by mutual agreement. In the event the appearance and/or production result in outstanding privilege objections which cannot be resolved by agreement of the parties, the government may seek their resolution by appropriate motion.

**IT IS SO ORDERED.**

---

state proceedings. In any event, resolution of the issue now would be premature.

**9.** For example, most of the categories of information referenced at pp. 3–4 of the government's response brief have no obvious relationship to the pending charges, based on the information presently before the court.