**UNITED STATES of America, and Ann Marie Govine, Revenue Officer, Internal Revenue Service, Appellees,**

v.

**David Edwin EDGERTON, Appellant.**

**No. 723, Docket 83–6220.**

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1984.

Decided May 10, 1984.

---

Jacob D. Zeldes, Bridgeport, Conn. (Paul F. Thomas, and Zeldes, Needle & Cooper, Bridgeport, Conn., on the brief), appointed by the District Court, for appellant.

Linda K. Lager, Asst. U.S. Atty., Bridgeport, Conn. (Alan H. Nevas, U.S. Atty., Bridgeport, Conn., on the brief), for appellee.

David Edwin Edgerton, Stamford, Conn., appellant, pro se filed a supplemental brief on his own behalf.

Before TIMBERS and VAN GRAAFEI-LAND, Circuit Judges, and RE, Chief Judge.[*]

TIMBERS, Circuit Judge:

This case presents the anomalous situation of a conscientious district court displaying the patience of Job in dealing with an obstreperous taxpayer determined to thwart and mock the very concepts of justice which he solemnly invoked in the name of the Constitution of the United States. And yet we are compelled to vacate the contempt order which the district court felt constrained to enter. We do so because a district court, in exercising the awesome power of contempt, must turn square corners.

The appeal is from an order entered July 20, 1983 in the District of Connecticut, Warren W. Eginton, *District Judge*, holding appellant Edgerton in civil contempt pursuant to 26 U.S.C. § 7604(b) (1982) because of his failure to answer questions put to him by the court at a contempt hearing. The Internal Revenue Service (IRS) had petitioned the district court for an order holding appellant in contempt because of his failure to comply with an earlier order of the court, entered March 11, 1983, which enforced an IRS summons. For the reasons below, we vacate the contempt order entered July 20, 1983 and remand the case to the district court for further proceedings.

### I.

### FACTS AND PRIOR PROCEEDINGS

On August 2, 1982, appellant was served with a standard IRS Collection Summons to appear before an IRS revenue officer on August 18, 1982. He was required to give testimony and to produce documents—such as W-2 forms, 1099 forms and records of deposits with financial institutions—regarding the tax years 1980 and 1981 for which the IRS contends appellant failed to file federal income tax returns. Appellant appeared on August 18, but did not comply with the summons either by testifying or by producing any of the requested documents.[1]

The IRS then petitioned the district court, pursuant to 26 U.S.C. §§ 7402(a) and 7604(a) (1982), for an order enforcing the summons. At a hearing before United States Magistrate Thomas P. Smith, appellant appeared pro se. He opposed the enforcement petition by asserting his Fifth Amendment privilege against self-incrimination. He asserted the privilege not only with respect to questions put to him by the magistrate, but also with respect to any attempt to compel him to produce records. He claimed that such records were his personal papers. As for the remainder of the magistrate's questions, appellant did not specify why he believed that his answers somehow would incriminate him.

The magistrate held that the IRS had complied with the standards for enforcement of a summons as set forth in *United States v. Powell*, 379 U.S. 48 (1964). He concluded that the requested records were not personal documents for the purpose of the Fifth Amendment. Appellant was ordered to comply with the summons. He was advised of his right to appeal to the district court, which he did.

After receiving memoranda from both sides, the court filed a written decision on March 4, 1983. Since the ultimate adjudication of contempt derives from this decision, the exact language is relevant:

"The court agrees with the magistrate that, at least in this civil investigation, the respondent has no Fifth Amendment privilege to withhold the documents de-

---

[*] Hon. Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

1. Appellant not only failed to comply. It is obvious that, from the outset, he intended deliberately to belittle the IRS investigation. When he appeared at the IRS office, he was dressed in boxing gloves, shorts, a robe and sneakers. He brought the press along to witness the proceeding. The IRS terminated the interview when appellant refused to talk out of the presence of the press.

Appellant's excuse for failure to file federal tax returns for 1980 and 1981 is that he believes it is the duty of the Secretary of the Treasury to bill every taxpayer for the amount of tax owed.

scribed above to the extent they were prepared by third parties, not by the respondent.

. . . . .

The respondent is therefore OR-DERED to comply when summoned again by the IRS, and to produce any requested documents which he himself did not prepare and which are otherwise properly subject to summons. If the respondent objects to any request to produce or to any question, he is to particularize that objection so that the court can independently assess the validity of his claim."

One week later, on March 11, 1983, the court signed the enforcement order, directing appellant to appear on April 4, 1983.

Appellant thereafter did appear at the IRS office on April 4, 1983. He refused to be sworn, produced no documents, and asserted a Fifth Amendment privilege with respect to virtually every question asked of him. The IRS thereupon petitioned the court for an order holding appellant in contempt.

Pursuant to an order to show cause, appellant appeared before the court on July 7, 1983. An assistant federal public defender, James Bergenn, Esq., was made available to appellant at this time, but appellant refused to recognize him as his attorney. The court painstakingly explained to appellant his right to counsel at a civil contempt hearing,[2] *In re DiBella*, 518 F.2d 955 (2 Cir.1975), and offered to appoint counsel if he desired. Upon appellant's request for time to consider his alternatives, the hearing was adjourned until July 20.

On July 20, appellant appeared with two individuals, both non-lawyers, whom he wished to have serve as his counsel. The court correctly denied this request, explaining that it would permit only a member of the bar to appear in a representative capacity. Appellant again was assisted by attorney Bergenn.

The court began the discussion of the substantive issues by stating that it was satisfied that the prior order enforcing the IRS summons had not been complied with. The court attempted to accommodate appellant's concern with the accuracy of the transcript of his April 4 appearance at the IRS office by stating that "we will cut right through that and go right to the questions which the law provides that you should be asked, and I will ask those questions at the behest of the Government." The court referred to the Supreme Court decision in *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548 (1983), and stated that it would conduct the hearing in accordance with that opinion. After interruption by appellant, the court said, "we're not dealing here with refusal to answer questions .... What we're talking about here is document production ...." Thereupon, the court stated its intended procedure:

"So it is the Court's intention in that connection merely to ask the three elements that really were considered by the Ninth Circuit in *Rylander*, and that is, as of right now, as of this date which is the 20th of July, there are only three significant questions. One, do the documents which are set forth in the Collection Summons in those categories exist at the present time? That's the first question the defendant should be directed to answer and will be directed to answer when I finish here. Second, are they currently within his possession or control? And third, does he regard them as being private documents?"

After an extensive colloquy with appellant on the difference between equity and law during which the court continued to display its patience, appellant was directed to be sworn by the clerk. Appellant flatly refused to take an oath or an affirmation.

In response to the first question set forth by the court and repeated to appellant, he declined to answer on the ground of his

---

**2.** Appellant maintained that, under the Constitution, he could have anyone—even his own mother—represent him if he wanted. When the court explained that this was not so, appellant

purported to fire Judge Eginton as a federal judge for his "failure to uphold the Constitution". The court continued to display extraordinary patience.

Fifth Amendment privilege against self-incrimination. The court endeavored, with attorney Bergenn's assistance, to advise appellant of the court's power to hold him in contempt. Attorney Bergenn then stated to the court the basis for appellant's assertion of his Fifth Amendment privilege: "[I]f he were to admit that the papers exist, that could be used in a *Schiff*-like prosecution, that is, a prosecution for willful failure to file." The court responded: "Your point is well made, Mr. Bergenn in behalf of Mr. Edgerton. I think it's well answered by the United States Supreme Court decisions in *Rylander, Couch* and *Fisher*."

To the second question, appellant again asserted his Fifth Amendment privilege. The court took it to be on the same ground as had just been outlined by attorney Bergenn, although appellant called it "personal information".

The court asked appellant the third question, in response to which appellant rambled about the invalidity of the summons. Appellant conferred with attorney Bergenn, after which he responded that "[i]f any papers do exist, then those papers are, indeed, private." The court clarified on the record appellant's position to be that all of the documents mentioned in the Collection Summons were private papers.

The court then stated its order as follows:

> "Now, I'm prepared, Mr. Edgerton, to sentence you to the custody of the Attorney General or his representative for an indefinite period, emphasizing that you hold the key to your release in your hands. I sentence you on a coercive basis of civil contempt, and you are confined until such time as you answer the three questions that I have put to you on this record today."

Execution of the civil contempt order and sentence were stayed pending the instant appeal. Jacob D. Zeldes, Esq. was appointed by the district court as advisory counsel for appellant on this appeal.

## II.

## ISSUES ON APPEAL

Three essential questions are presented on this appeal. First, which the government argued extensively in its brief, is whether appellant was barred by res judicata from raising his claimed Fifth Amendment privilege at his contempt hearing because it had been litigated fully and fairly in the enforcement proceeding. Second, precisely for what was the appellant adjudged in contempt? Third, whether appellant properly substantiated his claim of privilege and whether the court properly evaluated it. We shall consider these questions seriatim in the remainder of this opinion.

### (A) *RES JUDICATA*

The government claims that appellant litigated and lost on the issue of his Fifth Amendment privilege at the enforcement proceeding. That being the case, the government contends that he was barred from raising it again at the contempt hearing, citing *Maggio v. Zeitz,* 333 U.S. 56 (1948), and *United States v. Secor,* 476 F.2d 766 (2 Cir.1973).

The government is correct in its statement of this straightforward rule of law. The basic premise that the issues raised (or those that could have been raised) at an enforcement hearing are res judicata with respect to the same parties at a later contempt hearing was strongly endorsed by the Supreme Court in *United States v. Rylander, supra,* 460 U.S. at 756, 103 S.Ct. at 1551–52. And our decision in *Secor* is clearly in point. The appellant there was barred from relitigating his claimed Fifth Amendment privilege at his contempt hearing since he had raised it at the enforcement hearing, lost, and failed to appeal.[3] 476 F.2d at 769.

In its decision of March 4, 1983 enforcing the summons, the court held that

---

**3.** An enforcement order is final and therefore appealable. *United States v. Rylander, supra,*

460 U.S. at 757, 103 S.Ct. at 1551–52; *Reisman v. Caplin,* 375 U.S. 440, 449 (1964).

appellant had no Fifth Amendment privilege with respect to documents prepared by third parties.[4] The court further held that appellant was not foreclosed from raising particularized objections to specific questions or specific requests to produce.

Since we hold below, however, that the issue here is not appellant's failure to produce documents prepared by third parties—the only Fifth Amendment issue decided in the enforcement proceeding—it follows that appellant was not—and is not now—foreclosed from asserting a claim of Fifth Amendment privilege to questions asked of him.

## (B) *BASIS FOR THE CONTEMPT ORDER*

Appellant's advisory counsel has argued in his brief that the only basis for the finding of contempt was appellant's refusal to answer the three questions posed by the court.[5] In its brief, the government first appears to argue that appellant was held in contempt for disobeying the court's enforcement order, but then contends that the basis for contempt was appellant's "failure to establish his present inability to comply with the order by his refusal to answer the court's questions."

After reviewing the transcript of the contempt hearing, we agree with appellant's counsel that appellant was held in contempt solely because of his failure to answer to the court's satisfaction the three questions posed. While there may have been other grounds upon which appellant might have been held in contempt,[6] he was actually held in contempt because of his refusal to answer the three questions posed. Indeed, the only way that appellant could purge himself of his contempt was to answer the three questions.

The government's claim that the basis for appellant's contempt was his non-compliance with the enforcement order is not supported by the record. The government's discussion of appellant's "present inability to comply" with the enforcement order we believe to be misplaced, since appellant did not raise it as a defense.

## (C) *PROPRIETY OF THE CONTEMPT ORDER*

In light of the foregoing, we turn next to a consideration of whether it was proper for the district court to hold appellant in

---

**4.** The propriety of this ruling is not at issue on this appeal. We assume that the basis for the ruling was that documents prepared by third parties are not private papers, and therefore are not privileged under the Fifth Amendment.

We do note, however, that whether such a bright-line rule for third party documents is appropriate may be questionable in light of *United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237 (1984); *Fisher v. United States,* 425 U.S. 391 (1976); and *United States v. Fox,* 721 F.2d 32 (2 Cir.1983). Rather, since the focus has shifted from the privacy rationale first announced in *Boyd v. United States,* 116 U.S. 616 (1886), to the communicative aspects of the act of production itself, *Fisher v. United States, supra,* 425 U.S. at 410, what may be protected from compelled production under one set of facts may not be protected under another. *United States v. Schlansky,* 709 F.2d 1079, 1082 (6 Cir.1983), *cert. denied,* —— U.S.——, 104 S.Ct. 1591 (1984).

The district court also may have believed that documents prepared by third parties, such as W–2s and Forms 1099, might fall within the required records exception to the Fifth Amend-

ment. *Shapiro v. United States,* 335 U.S. 1 (1948). There is precedent for holding that W–2s and Forms 1099 are required records. *In re Doe,* 711 F.2d 1187, 1191 (2 Cir.1983); *In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 329, 336 n. 15 (3 Cir.1982), *aff'd in part, rev'd in part, and remanded sub nom. United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237 (1984). Whether the required records exception, which was a response to the *Boyd* privacy rationale, is still viable after the shift away from the privacy rationale, remains to be decided. *Cf. In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983,* 722 F.2d 981, 984 (2 Cir.1983) ("corporate records exception"). *But see In re Doe, supra,* 711 F.2d at 1192–93.

**5.** Appellant claims that the three questions asked of him on July 20 were different from the ones he was told he should expect to be asked, thus depriving him of fair notice as required by the due process clause, citing *In re Kitchen,* 706 F.2d 1266 (2 Cir.1983). In light of our holding today, it is not necessary for us to reach this claim.

**6.** See Section III, *infra,* of this opinion.

contempt based on his responses to the three questions posed.

■ We begin with common ground. The Fifth Amendment provides: "No person ... shall be compelled in any criminal case to be a witness against himself...." While it expressly provides for protection from *criminal* prosecution based on one's own testimony, "[i]t can be asserted in any proceeding, civil or criminal ... and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972). The mere assertion of the privilege, however, by the one whose testimony is sought, based on his reasonable belief, is not enough. "[H]is say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). To do so, the court is required to determine, in view of "the implications of the question, in the setting in which it is asked", whether the incriminating nature of the answer is evident. *Id.* at 486–87; *In re Grand Jury Subpoena of Flanagan*, 691 F.2d 116, 120 (2 Cir.1982). The court should be guided by its own perceptions of the unique facts of each case. *Hoffman v. United States, supra,* 341 U.S. at 487; *United States v. Rodriguez*, 706 F.2d 31, 37 (2 Cir.1983). If the court determines that the incriminatory nature is not readily apparent, the witness then must endeavor to explain how his answer will be incriminatory. *In re Morganroth*, 718 F.2d 161, 166–67 (6 Cir.1983); *In re Gilboe*, 699 F.2d 71, 74–75 (2 Cir. 1983). This burden forces a witness to come dangerously close to doing that which he is trying to avoid. It is a burden, however, which the Supreme Court recently has held is one properly borne by the witness. *United States v. Rylander, supra,* 460 U.S. at 759, 103 S.Ct. at 1553; *accord,*

*United States v. Baker*, 721 F.2d 647, 650 (8 Cir.1983) (per curiam).

■ Applying these concepts to the contempt proceedings below, we shall consider each of the questions posed to the witness.

(1) *Question No. 1*

The court's first question was whether the documents specified in the IRS Collection Summons exist. Appellant asserted his Fifth Amendment privilege. We assume that the court gave consideration to the implications of the question and the setting in which it was asked—a civil investigation of appellant's tax liability, including a lawful request for his tax records pursuant to § 7602. *United States v. LaSalle National Bank*, 437 U.S. 298 (1978). We further assume that the court concluded that the incriminating nature of the answer that appellant might give was not readily apparent. Accordingly, the court asked appellant to state with particularity his reasons for believing that his answer could incriminate him. Eventually, through attorney Bergenn, appellant explained that, if he acknowledged the existence of the records, his knowledge could be used as evidence of willfulness in a criminal prosecution for willful failure to file federal income tax returns; and that, if he denied their existence, and it later was proven that he had been furnished the records in the first place, any part he may have played in their becoming non-existent could be used in a prosecution against him. The court acknowledged that this was a good point, but rejected it in light of the Supreme Court's decisions in *United States v. Rylander, supra, Fisher v. United States, supra* note 4, and *Couch v. United States*, 409 U.S. 322 (1973). Having concluded that there was no valid objection, the court held appellant in contempt for not answering the question.

We believe that up to *and including* the statement of appellant's reason for objecting on Fifth Amendment grounds,[7] the pro-

---

7. The government invites us, in evaluating the validity of appellant's claim of privilege, to adopt the balancing test used in *United States v.*

*Carlson*, 617 F.2d 518, 520–22 (9 Cir.), *cert. denied*, 449 U.S. 1010 (1980), with the result that it might have the effect of raising the threshold of

cedure followed in the district court was proper. Our disagreement with the court lies in its evaluation of the validity of appellant's objection to the first question.

The three cases cited by the court we believe to be inapposite in evaluating appellant's claim of privilege. None involved a person held in contempt for refusing to answer questions. It is true that in *Rylander* the witness asserted a Fifth Amendment privilege to questions about the whereabouts of certain records, but he was not held in contempt for doing so. He was held in contempt for failing to produce records, even though he claimed at the time of the contempt hearing that he was unable to comply with the production order. It was in this context, where he had raised a defense upon which he had the burden of production, that the Court held that his claim of privilege was insufficient to sustain his burden. *Accord, United States v. Meeks,* 719 F.2d 809 (5 Cir.1983) (per curiam). The Court in *Rylander* carefully distinguished that situation from one where a witness is ordered to answer questions about the whereabouts of records:

"The Court of Appeals assumed, as we do, that Rylander's claim of privilege 'attached' to questions about the whereabouts of the records; that was the issue in *Curcio* [v. *United States,* 354 U.S. 118 (1957)]. But that is to say no more than if Rylander asserted a valid claim of privilege at the contempt hearing, then the claim could not be overruled by the court and the respondent incarcerated for failure to answer such questions."

460 U.S. at 760, 103 S.Ct. at 1554. Since appellant in the instant case did not raise the defense of present inability to comply with the court's enforcement order, we think that the court's reliance on *Rylander* was misplaced.

The Supreme Court decisions in *Fisher* and *Couch* also are not apposite here. Each involved contempt orders for failure to produce requested documents. Neither constitutes authority for the contempt order in the instant case.

We perceive only two colorable reasons for rejecting appellant's claim of privilege in the instant case, but we find both to be without merit. First, in view of the court's earlier order rejecting any Fifth Amendment privilege with respect to the production of documents prepared by third parties, it might appear anomalous at first blush to permit appellant to refuse to answer questions regarding their existence.[8] That, however, is precisely the case before us. Appellant was foreclosed from objecting to compelled production of documents prepared by third parties by virtue of the unappealed enforcement order. At no time, however, was he foreclosed from objecting to the giving of answers to questions, whether about those records or others. The district court's enforcement order expressly so states. And that is the teaching of *Curcio v. United States,* 354 U.S. 118 (1957).

In *Curcio,* the custodian of corporate records failed to produce certain records pursuant to a grand jury subpoena. He then was ordered by the district court to answer 15 questions as to the whereabouts of the records. This, the Supreme Court held, was not permissible under the Constitution. For, even though the custodian

potential incrimination that a person must show when the governmental interest in revenue collection is involved. We believe that the facts in the instant case are distinguishable from those in *Carlson,* where a taxpayer refused to complete the blanks on a tax return because of potential self-incrimination. We decline the government's invitation.

**8.** It might be argued that implicit in the enforcement order is a finding of existence of the documents, since non-existence would have been a defense to the summons that appellant could have raised at the enforcement hearing, but failed to do so. To the extent this is true, it would only preclude appellant from raising non-existence as a defense in the contempt hearing, but would not affect his right to assert his Fifth Amendment privilege, which is what is at issue here. An implied finding of existence, if any, could not be used offensively as collateral estoppel in a criminal prosecution for willful failure to file, in view of the different standards of proof. Despite such an argument, therefore, appellant was entitled to assert his Fifth Amendment privilege.

would have no legally recognized interest in objecting to compelled production of the records, "forcing the custodian to testify orally as to the whereabouts of nonproduced records requires him to disclose the contents of his own mind.... That is contrary to the spirit and letter of the Fifth Amendment." *Id.* at 128. Applying *Curcio* to the instant case, we conclude that, even though appellant could interpose no objection to the production of the documents prepared by third parties (because of res judicata), he could not be ordered to testify as to their existence or whereabouts.

The second colorable reason which might be advanced for rejecting appellant's claim of privilege is that his fear of criminal prosecution was too remote or speculative. This presents a more serious problem. The potential for self-incrimination must be a "real danger", *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 480 (1972), rather than merely an imagined or hypothetical one, *In re Morganroth, supra,* 718 F.2d at 167. The stated reason for appellant's claim of privilege was his fear of a prosecution for willful failure to file. He feared that his acknowledgement of the existence of the records or their non-existence could be used as a link in the chain to prove the element of willfulness—a claim that cannot be said to be altogether untenable. *In re Grand Jury Subpoenas Duces Tecum, supra* note 4, 722 F.2d at 986–87; *In re Grand Jury Empanelled March 19, 1980, supra* note 4, 680 F.2d at 335. The issue here, however, is the reasonableness of the fear.

It is significant that in the enforcement order the court made no finding as to the existence of the records. In the government's petition for the enforcement order, the revenue agent did aver that the records were in appellant's possession, but that conclusory statement is not enough. We must assume, therefore, that their existence was still an open matter at the time of the contempt hearing.[9] It follows that anything appellant were to say would add to the sum total of the government's case against him, which is the threshold showing of potential incrimination. *Fisher v. United States, supra* note 4, 425 U.S. at 411; *In re Grand Jury Empanelled March 19, 1980, supra* note 4, 680 F.2d at 335.

As for the reasonableness of appellant's fear of prosecution, we must decide whether appellant must go beyond this threshold level and show an intention on the part of the government to commence a criminal prosecution.[10] We believe that there is but one reasonable answer. The Supreme Court in *Hoffman v. United States, supra,* held that the Fifth Amendment privilege is valid as long as the answer would "furnish a link in the chain of evidence needed to prosecute," 341 U.S. at 486, and that the claimant can be required to answer only when it is clear that he is mistaken. *Id.; accord, In re Morganroth, supra,* 718 F.2d at 167. We believe that this proposition was best expressed by the Tenth Circuit when it stated that "[o]nce the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted." *United States v. Jones, supra* note 10, 703 F.2d at 478; *accord, United States v. Miranti,* 253 F.2d 135, 138–39 (2 Cir.1958).

Since we conclude that any responsive answer to the district court's first question would tend to increase the likelihood of success of a willful failure to file prosecution against appellant, we hold that appellant's claim of privilege to that question was valid and that he should not have been held in contempt for refusing to answer it.

---

9. Compare *United States v. Rylander, supra,* 460 U.S. at 761, 103 S.Ct. at 1554 n. 3; *Fisher v. United States, supra* note 4, 425 U.S. at 411–12; *United States v. Meeks, supra,* 719 F.2d at 811–12; *United States v. Schlansky, supra* note 4, 709 F.2d at 1083, for cases where the existence or possession of documents was not seriously in doubt.

10. There is nothing in the record to suggest that the government has any present intention of prosecuting appellant for willful failure to file. We do not suggest, however, that an affidavit to that effect by the government would have made any difference here. *United States v. Jones,* 703 F.2d 473, 478 (10 Cir.1983).

**(2) *Question No. 2***

The district court's second question,[11] regarding the whereabouts of the records, if answered by appellant, would have resulted in the same incriminatory consequences as would an answer to the first question.[12] What we have said above regarding the first question applies here. We hold that it was error to adjudge appellant in contempt for not answering the second question.

**(3) *Question No. 3***

Finally, this brings us to the third question and appellant's response. The court asked appellant if he considered the documents that had been requested to be private. At first appellant responded that he considered the entire summons a nullity. After consulting with his attorney, however, he answered the question by saying that he considered all of the papers, if they existed, to be private. At this point, the court first should have reminded appellant that at the enforcement hearing it was decided that any documents prepared by third parties were not private and would have to be produced. As to any other records requested, the court should have explained that the court, not appellant, was the final arbiter of whether documents are private and, accordingly, appellant would have to submit all such documents for *in camera* inspection. *In re Grand Jury Subpoena Duces Tecum, supra* note 4, 722 F.2d at 988.

Rather than pursuing these steps, the court held appellant in contempt. This was error.

### III.

### SUMMARY

Particularly in view of appellant's pro se status, we wish to emphasize the limited scope of our decision.

Appellant was held in contempt for claiming privilege pursuant to the Fifth Amendment not to answer certain questions posed by the court regarding the existence and whereabouts of certain tax records of appellant. This was error. We therefore vacate that order.

There remains in effect, however, the court's March 11, 1983 enforcement order, which directed appellant, based on the court's March 4, 1983 memorandum decision, to comply with the IRS Collection Summons with which he had been served, at least insofar as he had in his possession any such documents prepared by third parties. As to those documents, the court's enforcement order was final and has not been appealed. The resolution in that order of his claim of Fifth Amendment privilege is res judicata as to appellant. He may not raise a Fifth Amendment claim to the production of such documents, *even as to the existence or implicit authentication* of such documents, because of the collateral estoppel effect of that order. This is so even though the court made no express finding on the existence or possession of the documents. *United States v. Rylander, supra,* 460 U.S. at 760, 103 S.Ct. at 1554. Of course, if appellant should raise the defense of a present inability to comply with the enforcement order, he would bear the burden of production on such defense. *Id.* at 1552.

As to other documents sought by the IRS and possibly in the possession of appellant, as well as further questions regarding any of the requested documents, whether appellant can be compelled to produce the documents or answer the questions will depend partly on the extent of the knowledge the government can prove it possess-

---

**11.** If the correct procedure had been followed with respect to the first question, then this second question, in light of appellant's valid claim of privilege regarding the first question, should not have been asked at all until the government could show its knowledge of the existence and possession of the records.

**12.** We recognize that appellant's assertion of his privilege with respect to this question was less than articulate. We assume, however, as did the district court, that under the circumstances his claim was based on the same ground as his claim with respect to the first question.

es,[13] partly on the willingness of the government to grant immunity,[14] and upon appropriate reference to the Supreme Court's decisions in *United States v. Doe,* ___ U.S. ___, 104 S.Ct. 1237 (1984), *Fisher v. United States, supra, Curcio v. United States, supra,* and the several decisions of this Court in this area.

The order of contempt is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.[15]

Vacated and remanded.

VAN GRAAFEILAND, Circuit Judge, concurring:

I concur in the result.

---

**13.** We point out that, even if the government can prove the existence and possession of such self-prepared documents, it may still be confronted with the obstacle of implicit authentication by compelled production. *United States v. Fox, supra* note 4, 721 F.2d at 39. It may be that the only way to overcome this obstacle is by granting immunity. *United States v. Porter,* 711 F.2d 1397, 1401–02 (7 Cir.1983).

**14.** *In re Grand Jury Subpoenas Duces Tecum, supra* note 4, 722 F.2d at 988; *United States v. Jones, supra* note 10, 703 F.2d at 478.

**15.** The district court also fined appellant for the calculable expenses of the government in amount $1446.17. Appellant argues that he was not given a fair opportunity to contest the calculables. In view of our decision vacating the order of contempt, it is unnecessary for us to reach this question.