UNITED STATES of America

v.

John H. McCOLLOM, Defendant.

No. 86 CR 410.

United States District Court,
N.D. Illinois, E.D.

Jan. 15, 1987.

Anton R. Valukas, U.S. Atty., Sheldon Zenner, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Gary L. Starkman, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Defendant John H. McCollom is under indictment on charges of mail fraud, racketeering, and tax evasion. The superseding indictment alleges that McCollom received cash bribes beginning in the late 1970s until 1982 for disposing of cases pending before him while he served as a traffic court judge in the Circuit Court of Cook County, Illinois and failed to report that income on his tax returns.

The government has petitioned for an order under 18 U.S.C. §§ 6002 and 6003[1]

---

1. 18 U.S.C. § 6002 provides:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6003 provides:

(a) In the case of any individual who has been or may be called to testify or provide other

directing McCollom to comply with a trial subpoena *duces tecum.* The subpoena requires McCollom to produce

> Any and all original checks, check registers, or withdrawal slips, or other information reflecting withdrawals of funds or the drawing on funds from accounts owned by John H. McCollom in whole or in part.

The parties have agreed that the subpoena will be limited to material dated from 1978 to 1983. The petition complies with the statutory requirements in all respects. Accordingly, the order is granted subject to the qualifications outlined below.

McCollom moves to quash the subpoena, arguing that it violates his rights under the Fifth Amendment and that it fails to comply with Federal Rule of Criminal Procedure 17(c). McCollom also argues that the court should quash the subpoena under its supervisory powers. For the following reasons, the motion to quash is granted in part and denied in part.

## DISCUSSION

### I. Constitutional Considerations

█ An order under 18 U.S.C. § 6003 requiring an individual to give testimony or

information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

provide information is inextricably linked to the use immunity provided in 18 U.S.C. § 6002. When such an order is properly requested and issued, the immunity automatically follows. *In re Sealed Case,* 791 F.2d 179, 182 (D.C.Cir.) (Scalia, J.), *cert. denied,* —— U.S. ——, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986). It is derived from the statute, not from the court's order or the government's petition, and it is coextensive with the individual's privilege against compulsory self-incrimination under the Fifth Amendment. *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972) (upholding the constitutionality of 18 U.S.C. §§ 6002 and 6003 under the Fifth Amendment); *see also In re Daley,* 549 F.2d 469 (7th Cir.) (court order compelling testimony before a federal grand jury and extending immunity beyond Fifth Amendment requirements would not be enforced against the Illinois Attorney Registration and Disciplinary Commission), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). Therefore, the statute eliminates any Fifth Amendment objections to the order itself.

■ However, the extent of McCollom's Fifth Amendment rights determines the extent of the immunity conferred by § 6002. The government's only legitimate purpose for obtaining the documents described in the subpoena is to use them as evidence at trial, and the grant of immunity may preclude that use. Accordingly, an analysis of McCollom's Fifth Amendment rights is still necessary.

### A. Use of the Documents' Contents

McCollom argues that the contents of the documents sought are privileged under *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) and its progeny. In *Boyd* the Supreme Court held that the compulsory production of an invoice of certain imported glass owned by a partnership was unconstitutional in a forfeiture case, stating that "a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a wit-

ness against himself" in violation of the Fifth Amendment. 116 U.S. 634–35, 6 S.Ct. at 534.

Although later cases have not explicitly overruled *Boyd,* its reasoning and holding have been so seriously eroded that little if anything remains of either. *See, e.g.,* Note, *The Rights of Criminal Defendants and the Subpoena Duces Tecum: The Aftermath of Fisher v. United States,* 95 Harv.L.Rev. 683 (1982); Note, *The Life and Times of Boyd v. United States (1886–1976),* 76 Mich.L.Rev. 184 (1977). Most significantly, in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court held that taxpayers had no Fifth Amendment rights against the compulsory production of certain documents held by their lawyers relating to the preparation of their income tax returns, emphasizing that the Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination. *Id.* at 396–97, 96 S.Ct. at 1573–74; *see United States v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 1240, 79 L.Ed.2d 552 (1984) (emphasis in originals). That the documents on their face might incriminate the taxpayers did not in itself implicate the Fifth Amendment. Because no compulsion was involved in preparing the documents, their contents were not protected. *Fisher,* 425 U.S. at 410–11 & n. 11, 96 S.Ct. at 1580–81 & n. 11.

In *United States v. Doe,* the Supreme Court quoted extensively from *Fisher* in holding that the Fifth Amendment only applied to the defendant's act of producing certain documents relating to the operation of several sole proprietorships, not to the voluntarily compiled contents of the documents. "A subpoena that demands production of documents 'does not compel oral testimony; nor would it ordinarily compel the [defendant] to restate, repeat, or affirm the truth of the documents sought.' " *Doe,* 465 U.S. at 610–11, 104 S.Ct. at 1241, *quoting Fisher,* 425 U.S. at 409, 96 S.Ct. at 1580. The subpoena compels the act of producing documents, and the testimonial aspects of that act may be privileged under

the Fifth Amendment. *See Doe*, 465 U.S. at 612–14, 104 S.Ct. at 1242–43. However, the Court confirmed that "[i]f the party asserting the privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." *Id.* at 612 n. 10, 104 S.Ct. at 1242 n. 10. Both *Doe* and *Fisher* addressed the argument that the Fifth Amendment creates a zone of privacy which protects an individual and his personal records from compelled production by observing that:

> Within the limits imposed by the language of the Fifth Amendment, which we necessarily observe, the privilege truly serves privacy interests; but the Court has never on any ground, personal privacy included, applied the Fifth Amendment to prevent the otherwise proper acquisition or use of evidence which, in the Court's view, did not involve compelled testimonial self-incrimination of some sort.

*Doe*, 465 U.S. at 610–11 n. 8, 104 S.Ct. at 1241 n. 8, *quoting Fisher*, 425 U.S. at 399, 96 S.Ct. at 1575.

McCollom contends that the reasoning underlying *Fisher* and *Doe* applies only to documents held in a representative capacity on behalf of a business entity, not to documents held by a defendant as an individual, relying chiefly on *United States v. (Under Seal)*, 745 F.2d 834 (4th Cir.1984), *vacated as moot sub nom.*, *United States v. Doe*, 471 U.S. 1001, 105 S.Ct. 1861, 85 L.Ed.2d 155 (1985). In *Fisher*, the Supreme Court apparently left this possibility open. 425 U.S. at 414, 96 S.Ct. at 1582. *Doe* did not directly resolve the issue either. *Compare* 465 U.S. at 618, 104 S.Ct. at 1245 (O'Connor, J., concurring) ("the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind.") *with Id.* at 619 104 S.Ct. at 1246 (Marshall, J., concurring in part and dissenting in part) ("under the Fifth Amendment there are certain documents no person ought to be compelled to produce

at the Government's request [citation omitted]"). However, it is difficult to reconcile the holding of *(Under Seal)* with the emphasis on compulsion adopted in the *Fisher* and *Doe* majority opinions. In *Doe*, the Court of Appeals had

> reasoned that, notwithstanding the holdings in *Bellis* [*v. United States*, 417 U.S. 85 [94 S.Ct. 2179, 40 L.Ed.2d 678] (1974) ] and *Fisher*, the business records of a sole proprietorship are no different from the individual owner's personal records. Noting that Third Circuit cases had held that private papers, although created voluntarily, are protected by the Fifth Amendment, the court accorded the same protection to respondent's business papers.

465 U.S. at 609, 104 S.Ct. at 1240 (footnotes omitted). Rather than affirm the result by adopting a distinction between records held in a representative capacity and those held in a personal capacity, the Supreme Court reversed, criticizing the Third Circuit for adopting an unduly restrictive reading of *Fisher's* focus on compulsion. *Doe*, 465 U.S. at 612 n. 9, 104 S.Ct. at 1242 n. 9. If the Fifth Amendment does not protect the contents of voluntarily prepared business records held by the owner of a sole proprietorship because no compulsion was involved in their creation, it is difficult to see why the contents of an individual's voluntarily created private financial records should be treated differently.

■ Whatever is left of the holding in *Boyd*, it does not extend to financial records such as checks, check registers or information reflecting withdrawals from accounts. *See United States v. Porter*, 557 F.Supp. 703, 714–15 (N.D.Ill.1982) (respondent's appointment book was content-protected under the Fifth Amendment, but cancelled checks and withdrawal slips were not), *rev'd*, 711 F.2d 1397 (7th Cir.1983) (contents of cancelled checks and withdrawal slips are not protected, but the act of producing them is); [2] *see also Fisher*,

---

**2.** The Seventh Circuit reversed the district court's holding that the act of producing the

deposit slips and cancelled checks was not sufficiently testimonial to impart to them any *Fisher*

425 U.S. at 427, 96 S.Ct. at 1589 (Brennan, J., concurring) ("[Nonbusiness economic records in the possession of an individual] are, however, like business records and the papers involved in those cases, frequently, though not always, disclosed to other parties; and disclosure, in proper cases, may foreclose reliance upon the privilege."); *cf. United States v. Miller,* 425 U.S. 435, 442–43, 96 S.Ct. 1619, 1624–25, 48 L.Ed.2d 71 (1976) (subpoena of an individual's financial records from banks did not violate the Fourth Amendment because an individual has no legitimate expectation of privacy even in the contents of original checks and deposit slips).[3]  If the contents of private papers are protected at all under the Fifth Amendment, it is only where compelled disclosure would break "the heart of our sense of privacy." *Butcher v. Bailey,* 753 F.2d 465, 469 (6th Cir.), *cert. dismissed,* ⸺ U.S. ⸺, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985) (holding that personal records relating to the property of the bankrupt's estate are not so intimately personal as to evoke serious concern over privacy interests), *quoting Doe,* 465 U.S. at 619 n. 2, 104 S.Ct. at 1245 n. 2 (Marshall, J., concurring in part and dissenting in part). Thus while the contents of certain private personal documents, such as personal letters or diaries, may remain protected under the Fifth Amendment or other constitutional provisions, the contents of the documents sought by the government's subpoena in this case are not. *See Fisher,* 425 U.S. at 401 n. 7, 96 S.Ct. at 157 n. 7; Note, *The Aftermath of Fisher v. United States, supra,* 95 Harv.L.Rev. at 694–702.

## B. Use of The Act of Producing the Documents

McCollom's second argument is that immunity for the act of producing the documents described in the subpoena will not fully protect his Fifth Amendment rights. Although those documents were not created under any compulsion, the act of producing them will be compelled by the subpoena. Any testimonial consequences of the act of production are therefore protected by the Fifth Amendment. In *Fisher,* the Supreme Court noted that the act of producing documents may have at least three testimonial aspects: (1) that the papers demanded exist; (2) that they are in the possession or control of the person from whom they are sought; and (3) that they are authentic. *See Fisher,* 425 U.S. at 410–13, 96 S.Ct. at 1580–82.

Theoretically, the grant of immunity under 18 U.S.C. § 6002 eliminates McCollom's Fifth Amendment right against producing the documents sought. *See Doe,* 465 U.S. at 614–17 & n. 17, 104 S.Ct. at 1244 n. 17. However, the breadth of the government's subpoena in this case presents some serious practical problems. As McCollom points out, the government has not limited the subpoena to documents relating to any identified accounts or institutions. Literal compliance with the subpoena may reveal the existence of accounts currently unknown to the government. Use of any evidence relating to such newly

---

protection. 711 F.2d at 1401. The Seventh Circuit purported not to reach the question of the continuing viability of the *Boyd* "private papers" doctrine. *Id.* However its disposition of the appeal indicates that *Boyd* would not apply to the documents sought:

> We therefore would specifically require that, before the checks and deposit slips may be obtained for further investigation, not only must [the taxpayer] be granted statutory use immunity with respect to the documents, but also the court must fashion a protective order forbidding the government from referring in any way before the grand jury or at trial to the fact that [the taxpayer] produced the documents.

*Id.* at 1404. Thus the government could compel production of the documents it sought. Although the taxpayer's "implied testimony" via production would be shielded by the Fifth Amendment, the contents of the documents were not. *Id.*

3. Congress passed the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–22, partly as a response to *Miller. See United States v. Frazin,* 780 F.2d 1461, 1465 (9th Cir.), *cert. denied,* ⸺ U.S. ⸺, 107 S.Ct. 142, 93 L.Ed.2d 84, and *cert. denied,* ⸺ U.S. ⸺, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986). The Act provides statutory protection against unrestricted access to third party records.

discovered accounts would violate McCollom's immunity, so technically there is no Fifth Amendment problem. But there is little point in forcing McCollom to produce documents that the government cannot use either directly or derivatively. Nor is there any point in unnecessarily saddling this court and the parties with a suppression hearing to determine whether McCollom's immunity would be violated by the use of evidence pertaining to particular accounts. Accordingly, this court is willing to enforce the government's subpoena only to the extent that the government identifies particular accounts at particular institutions.

■ McCollom also contends that the immunity conferred is insufficient because some of the documents sought, such as check registers and "other information reflecting withdrawals of funds or the drawing on funds," could only be authenticated by the defendant. This contention is unpersuasive. Under *United States v. Porter*, 711 F.2d 1402–04, McCollom's immunity prevents the government from using his act of producing the documents as a means of authenticating them. The government must resort to other means of authentication, such as handwriting exemplars. However, as long as the government makes use of such alternative means of authentication, the Fifth Amendment is not violated.

■ McCollom next contends that the immunity order is insufficient because the act of producing the documents sought will acknowledge that they exist. Presumably the thrust of this argument is that the existence of the documents sought is at issue, and that by producing them McCollom in effect would be testifying that they do in fact exist. Therefore, any use of the contents of the documents would automatically violate the immunity order against derivative use of the act of production. *See Porter*, 711 F.2d at 1403–04 n. 5, *quoting Fisher*, 425 U.S. at 433–34, 96 S.Ct. at 1591–92 (Marshall, J., concurring). This reasoning may be persuasive in cases where there is little reason to assume the present existence and possession of certain

documents, such as personal letters and diaries. *See Fisher*, 425 U.S. at 432–33, 96 S.Ct. at 1591–92 (Marshall, J., concurring). However, in this case, as in *Porter* and *Fisher*, the existence and location of the documents sought are not in issue. McCollom's memorandum states that "defendant has submitted all of his financial records to counsel in order to prepare a defense to these charges...." The government has obtained records relating to McCollom's bank accounts from the banks at which the accounts were held. That documents matching the description appearing in the subpoena exist is a "foregone conclusion," *see, e.g., Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581, at least as to certain accounts.

That the non-existence of documents is a defense to the enforcement of a subpoena is irrelevant at this stage. McCollom is not now claiming a present inability to comply with the subpoena. Nor are *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957) or *United States v. Edgerton*, 734 F.2d 913 (2d Cir.1984) applicable here. Those cases held that the defendant could not be held in contempt for refusing to answer questions about the whereabouts of certain records. Neither case dealt with the compelled production of the documents themselves. *See Curcio*, 354 U.S. at 128, 77 S.Ct. at 1151. *Edgerton*, 734 F.2d at 920–21.

McCollom's fourth contention is that the government's offer of immunity is insufficient because it does not protect against derivative use of his act of producing the documents sought. Although the immunity petition itself does not specifically seek protection of derivative use of the act of production, 18 U.S.C. § 6002 automatically provides such protection. Also, as this court noted earlier, derivative use of the act of production does not necessarily encompass the contents of the records produced, or derivative use of those contents, and it is unlikely the act of production immunity extends so far in this case. Of course, after the documents are produced, McCollom is free to renew by a suppression motion the argument that the use of partic-

ular documents violates the immunity conferred by § 6002.

## II. Compliance with Fed.R.Crim.P. 17(c)

Constitutional considerations aside, McCollom argues that the government's subpoena fails to comply with Fed.R. Crim.P. 17(c). In the seminal case construing the purpose and scope of Rule 17(c), the Supreme Court recognized two fundamental characteristics of a subpoena *duces tecum,* in criminal cases: (1) it was not intended as an additional means of discovery, and (2) its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials. *Bowman Dairy Co. v. United States,* 341 U.S. 214, 219–20, 71 S.Ct. 675, 678, 95 L.Ed. 879 (1951). To require production before trial the moving party must show that (1) the documents are evidentiary and relevant; (2) they are not otherwise procurable in advance of trial by the exercise of due diligence; (3) the movant cannot properly prepare for trial without such production; and (4) the application is made in good faith and not as a general "fishing expedition." *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974), *quoting United States v. Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y.1952). Rule 16, which regulates discovery in criminal cases, has very different requirements.

■ McCollom first contends that the subpoena is overbroad and unspecific. According to McCollom, the subpoena is overbroad because it seeks documents created during a six-year period for use in a case which covers only two tax years. But McCollom's characterization of the indictment in this case is not entirely accurate. Count 20 of the superseding indictment charges McCollom with violating the Racketeer Influenced and Corrupt Organizations Act (RICO) between the middle 1970s and the spring of 1982. The parties have agreed to limit the subpoena to documents created between 1978 and 1983. Upon that understanding, the subpoena is not overbroad temporally. *See, e.g., In re Rabbini-cal Seminary Netzach Israel Ramailis,* 450 F.Supp. 1078, 1084–85 (S.D.N.Y.1978).

■ In addition, McCollom complains that the terms "check registers" and "accounts" are incomprehensible and the phrase "other information reflecting withdrawals of funds or drawing on funds from accounts" fails to sufficiently identify the documents sought. The court disagrees. It is not necessary that a subpoena designate each particular paper desired. Designation of kinds of documents with reasonable particularity will suffice. 2 Wright, *Federal Practice and Procedure,* § 274 at 159 (2d ed. 1982). The terms "check registers" and "accounts" have common, ordinary meanings. In the context of the subpoena, "check registers" refers to notations of checking activity made by McCollom; "accounts" refers to a sum of money or its equivalent deposited at a financial institution and subject to withdrawal by McCollom. The "other information" phrase approaches overbreadth, but it is sufficiently descriptive to permit compliance and it is not so broad as to be oppressive. *See Rabbinical Seminary,* 450 F.Supp. at 1084–85 (upholding a grand jury subpoena requesting, among other things, "Cash disbursement journals or other records or workpapers reflecting disbursements"); *see also Margoles v. United States,* 402 F.2d 450, 451 (7th Cir.1968) (approving a ruling by the district court quashing as overbroad a subpoena seeking all FBI equipment logs relating to the use of electronic eavesdropping equipment during a specified period, where the judge indicated that he would refuse to quash a subpoena seeking only such information pertaining to the petitioner).

■ Second, McCollom contends that the subpoena seeks documents that are irrelevant or inadmissible as evidence. This contention may ultimately prove to be correct, but it does not justify quashing the government's subpoena. Under Rule 17(c) the materials subpoenaed need not actually be used in evidence. "It is only required that a good-faith effort be made to obtain evidence." *Bowman Dairy,* 341 U.S. at 219–

20, 71 S.Ct. at 678. At this stage the government has sufficiently established the relevance and admissibility of the documents sought. *See United States v. Nixon*, 418 U.S. at 700–02, 94 S.Ct. at 3103–04. McCollom does not claim that the subpoena was issued for some purpose other than to obtain evidence for use at trial. Indeed, he characterizes the subpoena as a "novel attempt to gain evidentiary information from an individual in order to use it against him in a pending case...." (Defendant's memorandum in support at 2.) *Compare United States v. Walters*, 558 F.Supp. 726, 728 (D.Md.1980) (government could not use Rule 17(c) to obtain records to help federal law enforcement officials locate and apprehend the defendant, rather than for use as evidence at trial).

■ Third, McCollom contends that the subpoena must be quashed to the extent that the government is seeking documents that are available from other sources, such as the banks at which he maintained accounts. This contention is also not completely accurate. The subpoena calls for original documents, and the government is able to obtain only photocopies from the banks. More importantly, some of the photocopies apparently were unclear or illegible. Under the circumstances, the availability of the bank records is an inadequate ground on which to quash the subpoena. *See United States v. Woodner*, 28 F.R.D. 22, 23 (S.D.N.Y.1961) (denying defendant's motion to quash where the government had copies of some but not all of the records sought).

### III. Supervisory Powers

■ Finally, McCollom argues that the court should quash the government's subpoena under its supervisory powers to safeguard against unreasonableness and oppression. According to McCollom, allowing the subpoena is tantamount to using the grand jury to investigate an indicted case. However, Rule 17(c) expressly authorizes the use of a trial subpoena to obtain documentary evidence. Use of the supervisory power to quash the government's subpoena is justified to prevent the government from misusing the trial subpoena as a discovery device. But limiting the subpoena to documents relating to accounts the government has already identified adequately addresses this concern. Immunity for the act of production provides additional safeguards. Absent stronger indications that the subpoena was not issued in a good-faith effort to obtain evidence, this court will not invoke its supervisory powers to quash it entirely.

### CONCLUSION

The government's petition for an order directing compliance with its trial subpoena is granted. McCollom's motion to quash the subpoena is granted only to the extent that the subpoena calls for documents relating to accounts that the government has not independently discovered. McCollom is directed to produce the documents sought by the subpoena as they relate to specific accounts and specific financial institutions identified in advance by the government. No use of or reference to McCollom's act of producing any documents under the trial subpoena will be permitted at trial.