UNITED STATES of America and Joseph R. Sandefur, Special Agent, Internal Revenue Service, Plaintiffs-Appellees,

v.

Leslie B. SCHLANSKY, Defendant-Appellant.

No. 82–5200.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1983.

Decided June 16, 1983.

Wayne F. Collier, Bulleit, Kinkead, Irvin & Reinhardt, David R. Irvin, Lexington, Ky., [Lead Counsel] (argued), for defendant-appellant.

Louis De Falaise, U.S. Atty., Marianna J. Read, Asst. U.S. Atty., Lexington, Ky., Glenn L. Archer, Jr. [Lead Counsel] Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section (argued) Charles E. Brookhart and Wm. Whitledge, Tax Division, U.S. Dept. of Justice, Washington, D.C., for plaintiffs-appellees.

Before LIVELY and ENGEL, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

LIVELY, Circuit Judge.

This appeal concerns the validity of a taxpayer's refusal to comply with an administrative summons issued by the Internal Revenue Service which directed him to appear before an officer of the IRS and produce documents described in the summons for examination. The taxpayer appeared as directed but refused to produce the documents. His refusal was based upon the assertion that his Fifth Amendment privilege against compulsory self-incrimination was abridged by the order to produce the documents. Following the taxpayer's refusal to comply the IRS sought and obtained from the district court an order enforcing the summons, and this appeal followed.

## I.

The IRS summons was issued pursuant to section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602[1] and directed the

---

1. § 7602. Examination of books and witnesses
　For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
　　(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
　　(2) To summon the person liable for tax or required to perform the act, or any officer or

employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

taxpayer, Leslie B. Schlansky, to appear and produce the following:

A ring binder containing 8″ × 12″ sheets (approximate), 3 inches deep, containing cancelled checks, bank statements, invoices, receipts glued to the accountants worksheets for the years 1976 and 1977.

In its application for enforcement the IRS stated, by affidavit of a special agent, that it was necessary to examine the materials described in the summons "in order to properly investigate the Federal tax liability of Leslie B. Schlansky for the years 1976 and 1977." The affidavit also stated that no recommendations had been made to the Department of Justice for prosecution of the taxpayer and that the IRS had reached no conclusion respecting prosecution.

The district court referred the enforcement proceedings to a magistrate who conducted a hearing. The government called three witnesses, all of whom were employees of the accounting firm which prepared the taxpayer's 1976 and 1977 income tax returns. Together the testimony of these witnesses gave a fairly clear picture of the procedures followed by the firm in dealing with materials submitted by Mr. Schlansky and in preparing his tax returns. Mr. Schlansky was "not a typical [Form] 1040 client" in that the firm made a detailed analysis of all his financial transactions and reconciled the materials, performing bookkeeping as well as tax preparation services. Apparently all of the work was done after the close of each tax year, however. The records which Mr. Schlansky brought to the accounting firm consisted of bank statements, cancelled checks, deposit slips, general ledgers "and the like." An employee of the firm would enter and reconcile the information on "work papers" and then prepare the tax returns. The documents submitted by the taxpayer were arranged in order, and "in appropriate instances," stapled to the work papers. The accountant did not make copies of the documents submitted by the taxpayer. These documents, attached to the accountant's work papers, were placed in a binder or folder and returned to the taxpayer. The accounting firm also kept a "tax file" on Mr. Schlansky which contained copies of the returns and "various notes." The summons was directed only to the binder and its contents.

Following the hearing the magistrate ruled that the work papers prepared by the accounting firm were not protected by the taxpayer's privilege against compulsory self-incrimination, but that the original records produced to the tax preparer by the taxpayer were protected. The magistrate recommended that the district court order the taxpayer to deliver the binder and contents to the magistrate for *in camera* inspection and separation of the original documents from the accountant's work papers. The court accepted this recommendation and the magistrate inspected the binder and its contents. After this examination the magistrate concluded that the materials fell into various categories, but that the taxpayer had no valid Fifth Amendment privilege as to any of them. The magistrate reaffirmed his previous conclusion that the accountant's work papers were subject to production. In addition, he found that statements of the taxpayer's bank accounts and summaries of account activities, statements of interest earnings prepared by banks and sent to the taxpayer, original cancelled checks written by taxpayer's wife, copies of church contribution records, and copies of corporate tax returns were subject to production because they "are not private papers authored by him [the taxpayer] and in which he may have had a reasonable expectation of privacy." Finally, the magistrate concluded that original cancelled checks written by the taxpayer and original deposit slips prepared by him were subject to production. Even though these materials were prepared by the taxpayer, their preparation was voluntary and the mere act of turning them over to the IRS did not constitute a testimonial communication that was incriminating. Since the existence of

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

Aug. 16, 1954, c. 736, 68A Stat. 901.

the documents was not in doubt and they could be authenticated by someone other than the taxpayer, the fact that the content of these preexisting documents might be incriminating did not create a privilege to withhold them. The district court adopted the magistrate's findings, conclusions and recommendations and ordered the summons enforced.

## II.

### A.

For many years it was settled that "any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of a crime" would violate the privilege against compulsory self-incrimination. *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886). *Boyd* read the Fourth and Fifth Amendments as both protecting the right of privacy and held that seizure of a person's private papers to be used in evidence against him is no different from compelling him to be a witness against himself. Though *Boyd* has never been explicitly overruled, its approach to the right of privacy has been modified by later decisions. In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), respectively the Supreme Court upheld a summons to a taxpayer to produce his accountant's work papers and the seizure pursuant to a warrant of private business records. The central issue is no longer the nature of the materials whose production is compelled. Instead, the question is whether their production involves testimonial communication on the part of the person to whom a summons or subpoena is directed.

### B.

■■■■ If the accounting firm had retained possession of the binder and its contents a summons directing the firm to produce the documents would not have implicated the taxpayer's privilege against compulsory self-incrimination. The . Fifth Amendment privilege is a personal one which adheres to the person rather than to information which might incriminate him. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Thus the taxpayer must have actual or constructive possession of the summonsed documents in order to invoke the privilege. Even when the taxpayer has possession of the work papers prepared by an accountant, a summons to produce such documents is ordinarily not subject to a Fifth Amendment objection. The privilege applies only where the party summonsed is compelled to make a testimonial communication that is incriminating. *Fisher v. United States,* 425 U.S. at 408, 96 S.Ct. at 1579. Though a summons to a taxpayer to produce his accountant's work papers involves compulsion, it does not require testimony by the taxpayer or compel him "to restate, repeat, or affirm the truth of the contents of the documents sought." *Id.* at 409, 96 S.Ct. at 1580. The fact that the documents might be incriminating on their face is irrelevant; unless some testimonial act by the taxpayer is compelled by the summons, the Fifth Amendment privilege against self-incrimination offers no basis for refusing to comply with a summons. *Id.* at 410, 96 S.Ct. at 1580. The magistrate correctly concluded that the taxpayer had no valid reason for refusing to produce the accountant's work papers.

In *Fisher* the Supreme Court did not reach the question whether the Fifth Amendment would shield a taxpayer from producing his own tax records in his possession. 425 U.S. at 414, 96 S.Ct. at 1582. It is a question of fact in each case whether a compelled testimonial communication is involved in responding to a summons or subpoena *duces tecum. Id.* at 410–11, 96 S.Ct. at 1580–81. Where nothing more is involved than surrendering materials already in existence, fully identified and requiring no authentication by the taxpayer, testimony is not involved. *Id.* However, in some situations "the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal

records in his possession because the very act of production may constitute a compulsory authentication of incriminating information . . . ." *Andresen v. Maryland,* 427 U.S. at 473–74, 96 S.Ct. at 2745.

■ The Supreme Court has identified three elements which must be present in order to avoid complying with a subpoena *duces tecum* or IRS summons on Fifth Amendment grounds. These elements are (1) compulsion, (2) testimonial communication, (3) incrimination by such communication. See *United States v. Authement,* 607 F.2d 1129, 1131 (5th Cir.1979) (per curiam). The fact that production of a voluntarily prepared document is compelled does not mean that any preexisting incriminating contents are "compelled testimonial communications" within the Fifth Amendment privilege. *Matter of Grand Jury Empanelled February 14, 1978,* 603 F.2d 469, 476 (3d Cir.1979). The focus is on the question of whether there are testimonial aspects to the very act of producing the materials in compliance with the summons or subpoena.

We conclude that there would be no testimonial ingredient in the act of producing the binder or any of its contents. There is no serious question as to the existence or location of the documents; the summons is quite specific. Those prepared by others can be identified by the preparers. Employees of the banks can identify bank statements, cancelled checks and deposit slips which are prepared by or processed through the banks and can testify to their accuracy by comparing them to bank records. No authentication by the taxpayer would be required. The present case thus resembles *Fisher.* The existence of the binder and contents and its possession by Mr. Schlansky is not in dispute. Their production will involve no "truthtelling" by the taxpayer, *Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581; nor will it provide authentication. Rather, responding will "express nothing more than the taxpayer's belief that the papers are those described in the [summons]." *Id.* at 413, 96 S.Ct. at 1582.

This case does not concern an attempt by the government to use the act of production as authentication of the documents. If the government should attempt to authenticate the binder and its contents as evidence in subsequent criminal proceedings with proof that they were produced by the taxpayer, a Fifth Amendment objection could be interposed at that time. Such proof would seek to add testimonial value to the otherwise testimony-free act of production.

C.

We have not discussed cases from other circuits dealing with the question of what remains of *Boyd* after *Couch, Fisher* and *Andresen.* E.g., *Matter of Grand Jury Empanelled March 19, 1980,* 680 F.2d 327 (3d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1890, 77 L.Ed.2d 281 (1982); *United States v. Davis,* 636 F.2d 1028 (5th Cir.1981); *In re Grand Jury Proceedings,* 626 F.2d 1051 (1st Cir.1980). Each had facts which differed from those in the present case and made the analysis somewhat more difficult. It has been suggested that *Boyd* retains its full vigor when applied to those " 'privacies of life' which are beyond the pale of legitimate government intrusion." Note, Formalism, Legal Realism, and Constitutionally Protected Privacy Under the Fourth and Fifth Amendments, 90 Harv.L.Rev. 945, 947 (1977) (quoting *Boyd,* footnote omitted). Obviously financial records which one assembles and delivers to an accountant for the purpose of preparing tax returns do not have the same degree of privacy as a personal diary. *Couch v. United States,* 409 U.S. at 335, 93 S.Ct. at 619 ("there can be little expectation of privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required in an income tax return"). With respect to these less private personal papers a majority of the Supreme Court appears to agree that the Fifth Amendment does not absolutely bar their compelled production. The inquiry must be directed to the circumstances surrounding the production itself, rather than the nature of the materials whose compelled production is sought.

Under this focus the key question is whether the compelled production involves compelled testimonial communication. The answer to this question in turn depends on whether the very act of production supplies a necessary link in the evidentiary chain. Does it confirm that which was previously unknown to the government; e.g., the existence or location of the materials? Does it supply assurance of authenticity not available to the government from sources other than the person summonsed? Though the party seeking to avoid compliance does not have to show more than is required to demonstrate that the privilege is properly claimed, he must make some showing that the act of production alone would involve an incriminating testimonial communication. *Matter of Grand Jury,* etc., 603 F.2d at 477. In the present case the taxpayer has made no showing in this regard.

The judgment of the district court is affirmed.