## In re GRAND JURY EMPANELLED MARCH 8, 1983.

### No. 83–5508.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 24, 1983.

Decided Nov. 23, 1983.

Certiorari Dismissed March 8, 1984.
See 104 S.Ct. 1458.

James F. Neal, Neal & Harwell, James Sanders argued, Nashville, Tenn., for appellant.

John W. Gill, U.S. Atty., Robert E. Simpson, Knoxville, Tenn., Robert G. Clark, III, argued, Washington, D.C., for appellee.

Before LIVELY, Chief Judge, KRUPANSKY, Circuit Judge, and COOK, District Judge.[*]

LIVELY, Chief Judge.

The appellant Jacob J. Butcher was served with a subpoena duces tecum to appear before a federal grand jury in the Eastern District of Tennessee. The subpoena ordered Butcher to produce specified financial and other business records of eight named companies. Butcher moved to quash the subpoena on the ground that the act of producing the records would violate his Fifth Amendment privilege against compelled self-incrimination. The government made it clear at a hearing that it sought only corporate records. It was also disclosed at the hearing that the government

---

[*] The Honorable Julian A. Cook, Jr., Judge, U.S. District Court for the Eastern District of Michigan, sitting by designation.

had not located incorporation records of three of the eight companies.

Butcher conceded at the hearing that the contents of corporate records are not privileged under the Fifth Amendment. However, he contended that he was protected by the Fifth Amendment from the act of producing the records, arguing that this act in itself would be testimonial and incriminating. The district court denied the motion, holding that since the documents sought were corporate records held by Butcher in a representative capacity they were not protected by the privilege. The district court also denied Butcher's request to be permitted to submit an affidavit and memorandum *in camera* setting forth the reasons why the act of production, in itself, would be testimonial and incriminating.

Butcher then appeared before the grand jury, but failed to produce the subpoenaed records, asserting Fifth Amendment grounds. He was held in contempt and remanded to the custody of the Attorney General until he complies with the district court's order. Enforcement of the order of confinement was stayed by the district court to give Butcher an opportunity to appeal its decision.

On appeal Butcher maintains that the district court erred in denying the motion to quash and in refusing to consider *in camera* his proffered affidavit and memorandum. He relies principally upon *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *United States v. Schlansky,* 709 F.2d 1079 (6th Cir.1983), in support of both claims of error. There is no dispute that *Fisher* established the proposition that the very act of producing documents may be testimonial and incriminating, and if production is compelled, may be entitled to Fifth Amendment protection. This is true regardless of whether the contents of the documents are incriminating. This court discussed and applied *Fisher* in *Schlansky,* and Butcher relies on the following language from our opinion:

The central issue is no longer the nature of the materials whose production is compelled. Instead, the question is whether their production involves testimonial communication on the part of the person to whom the summons or subpoena is directed.

709 F.2d at 1082. Butcher argues from this quotation that the Fifth Amendment privilege applies to the act of producing corporate records as well as the act of producing personal records. On the basis of language in *Fisher* and *Schlansky* he also maintains that he was entitled to establish that the facts and circumstances of this case would make the act of production both testimonial and incriminating. Since an open showing of these facts and circumstances would nullify the privilege, he contends that the district court erred in refusing his *in camera* submissions.

We believe the appellant misreads *Fisher* and *Schlansky.* Both cases involved documents which were the property of the person under investigation. In *Fisher* the records had been prepared by an accountant and delivered to the taxpayer. The taxpayer, after he knew he was the subject of an income tax investigation, delivered the papers to an attorney who was to represent him in connection with any tax disputes. An IRS summons was served on the attorney who claimed a Fifth Amendment privilege against producing the records in compliance with the summons. The Supreme Court held that the attorney could not claim a privilege on behalf of the client, and the client would have had no Fifth Amendment privilege against the act of producing the documents if the summons had been served on him. The Court stated that it was doubtful that the act of production, even if implicitly admitting the existence and possession of the papers, would rise to the level of testimony within the protection of the Fifth Amendment. 425 U.S. at 411, 96 S.Ct. at 1581. Since the records sought were prepared by the accountant, their production by the taxpayer would not serve to authenticate them. It would "express nothing more than the taxpayer's belief that the

papers are those described in the subpoena." *Id.* at 413, 96 S.Ct. at 1582.

Throughout the *Fisher* opinion the Supreme Court emphasized that the subpoena did not seek production of the taxpayer's "private papers." *E.g., id.* at 414, 96 S.Ct. at 1582 ("for the papers demanded here are not his 'private papers.'"). Prior to *Fisher* the Supreme Court held in a line of cases that a person who holds documents of a collective entity in a representative capacity may be compelled by subpoena or summons to produce those documents even though they may incriminate the person required to produce them. *See, e.g., Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (partnership); *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) (unincorporated association); *Dreier v. United States,* 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911) (corporation—subpoena directed to corporate officer); *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911) (corporation—subpoena directed to corporation). Rather than retreating from these holdings in *Fisher* the Court reaffirmed them. 425 U.S. at 411–12, 96 S.Ct. at 1581.

In *Schlansky* the IRS summons was directed to the taxpayer rather than to his accountant or attorney. Again the documents sought were the personal property of the person under investigation, not those of a corporation or other collective entity. After approving the *in camera* inspection of the documents to determine whether the act of production would indeed be testimonial and incriminating as the taxpayer claimed, this court affirmed the district court's denial of a motion to quash the summons. The *in camera* inquiry was required because there was a possibility that the act of production would supply a necessary connection between these personal documents and the taxpayer. Such a connection might be self-incriminating. If testimonial in nature, production under these circumstances could not be compelled.

We do not believe that the mere act of producing corporate records satisfies the three criteria for protection under the Fifth Amendment. The criterion of compulsion is satisfied, but the mere act of producing the records of some entity rather than the personal papers of the person subpoenaed satisfies neither the requirement that the act be testimonial nor that it be self-incriminating. At most the act of production would acknowledge that documents exist which are the property of corporations and that the person subpoenaed believes that the records produced are those commanded.

In our view the Supreme Court in *Fisher* merely substituted a new test for the "mere evidence" standard it had established in *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), for determining whether the compelled production of *personal papers* is privileged. It did not extend Fifth Amendment protection to the production of the records of a corporation or other collective entity. Subsequent to its *Fisher* decision the Supreme Court stated in *Andresen v. Maryland,* "It is established that the privilege against self-incrimination may not be invoked with respect to corporate records." 427 U.S. 463, 468 n. 2, 96 S.Ct. 2737, 2742 n. 2, 49 L.Ed.2d 627 (1976) (citation omitted).

This and other courts have continued to treat the production of corporate records as being outside the protection of the Fifth Amendment privilege following *Fisher. E.g., In re Grand Jury Proceedings (Shiffman),* 576 F.2d 703 (6th Cir.), *cert. denied,* 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978); *In re Grand Jury Proceedings,* 626 F.2d 1051, 1053 (1st Cir.1980); *United States v. Davis,* 636 F.2d 1028, 1044 (5th Cir.1981), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1982). The appellant cites *In re Grand Jury Proceedings (Katz),* 623 F.2d 122 (2d Cir.1980), where the court remanded for an inquiry by the district court into whether production of public documents would be a testimonial communication under *Fisher. Katz* is distinguishable from the present case in important aspects, and its holding is not nearly so favorable to appellant as he would have us believe. The subpoena was served on an attorney to produce his client's public records. After he had already surrendered all documents referring on their face to his client or a corporation named in the subpoena, the issue arose whether the attorney could be compelled to produce other documents relating to "any company owned, op-

erated or controlled" by his client. It is not clear that all records sought were corporate records; the broad language of the subpoena could apply to sole proprietorships. We do not believe *Katz* requires the result argued for by the appellant.

The appellant makes much of the fact that the government is not certain that all the documents sought from him are in existence. He argues that *Fisher* and *Schlansky* would have been decided in favor of the taxpayers if the IRS had not known of the existence of all the records it sought and clearly identified them in the subpoenas and summonses. This overlooks, again, the fact that the documents sought in the two cited cases were personal records. Because they were personal records the very act of producing them might have provided a necessary link between the taxpayer and the records. The production of the records of a corporation, standing alone, does no more than signify that the person who produces them has them in his possession, necessarily in a representative capacity since corporations can act only through representatives, and that he believes the records produced are those described in the order of production. Any subsequent attempt by the government to convert the act of production into a self-incriminating testimonial act would be subject to a Fifth Amendment challenge. As we pointed out in *Schlansky*,

> If the government should attempt to authenticate the binder and its contents as evidence in subsequent criminal proceedings with proof that they were produced by the taxpayer, a Fifth Amendment objection could be interposed at that time. Such proof would seek to add testimonial value to the otherwise testimony-free act of production.

709 F.2d at 1083.

The judgment of the district court is affirmed.