**In re Jacob F. BUTCHER, a/k/a Jake F. Butcher and Jake Butcher, Debtor.**

**Bankruptcy No. 3–83–01036.**

United States Bankruptcy Court,
D. Tennessee.

Sept. 24, 1984.

---

Bass, Berry & Sims, J.O. Bass, Jr., Wallace W. Dietz, Nashville, Tenn., for trustee.

Neal & Harwell, William T. Ramsey, Nashville, Tenn., for debtor.

## MEMORANDUM ON TRUSTEE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

CLIVE W. BARE, Bankruptcy Judge.

The question before the court is whether certain records pertaining to property of the debtor's estate are within the protective scope of the Fifth Amendment privilege against self-incrimination.

I

An order for relief under chapter 7 was entered against the debtor on August 22, 1983, pursuant to an involuntary petition. 11 U.S.C.A. § 303 (1979). On February 1, 1984, the court entered Order No. 50 directing the debtor to surrender to the trustee:

(1) The books of any and all corporations relating to property of the estate in either the actual or constructive possession of the debtor;

(2) The books and records of any noncorporate collective entity, including but not limited to partnerships, relating to property of the estate in either the actual or constructive possession of the debtor;

(3) Noncorporate or nonpartnership records having public aspects, if any, which are required to be kept by either federal or state law;

(4) Work papers or similar documents: (i) prepared by the debtor's accountants or other third parties, (ii) known to exist and identifiable by the trustee, and (iii) requiring no authentication by the debtor or his attorneys, insofar as the attorney-client privilege is applicable;

(5) All personal books and records of the debtor relating to property of the estate, not heretofore described in this order unless: (i) the contents of those books and records are self-incriminating, or (ii) the act of producing said books and records is self-incriminating.[1]

Although cross appeals were filed,[2] the debtor has mooted his appeal by complying with the terms of the turnover order. He has not, however, surrendered to the trustee books and records which he believes to be within the circumscription of paragraph (5) of Order No. 50.

## II

On January 19, 1984, Hugh Rule d/b/a Rule Construction Company commenced an adversary proceeding against Jake F. Butcher d/b/a Deere Acres Farm.[3] Rule seeks judgment in the amount of $760,-741.84 and recognition of a lien, in like amount, against Deere Acres, property of the debtor's estate situated in Walton County, Georgia.[4] According to Rule, his claim arises from an oral agreement, with either the debtor or the debtor's agent, to provide labor and materials to improve Deere Acres. Rule's compliance with the relevant Georgia materialman's lien statute is undisputed. He initially filed notice of a lien claim for $1,324,268.19, but he has amended his claim by lowering the amount to $760,741.84. The only issues in the Rule adversary proceeding pertain to the validity of the underlying claim and the amount of the asserted lien.

Though not named as a party, John H. Bailey, III, debtor's trustee in bankruptcy and the real party in interest, was served with a copy of Rule's complaint. In his answer, the trustee demands an accounting of payments made against Rule's claim. The trustee particularly requests a showing of why the lien claim was amended. Further, he specifically avers that Rule has failed to credit the debtor's account in the amount of $34,577.02, paid by two prepetition checks drawn against a Deere Acres Farm account with First American Bank of Walton County, Georgia.

On August 13, 1984, James Neal, one of the debtor's attorneys, informed J.O. Bass, Jr., an attorney for the trustee, that he had possession of documents relevant to the Rule claim which had not been surrendered to the trustee. The documents have been retained because the debtor's attorneys believe turnover is excused under paragraph (5) of Order No. 50, which recognizes the debtor's Fifth Amendment privilege against self-incrimination. On August 28, 1984, the trustee requested counsel for the debtor to turn over all records material to Rule's claim. When this request was denied the trustee filed a motion to compel production and requested an in camera

---

1. See *In re Butcher*, 38 B.R. 785 (Bankr.E.D. Tenn.1984), *appeals docketed*, Nos. 84–5134 and 84–5135 (6th Cir. Feb. 9, 1984).

2. Pursuant to their agreement, the trustee and the debtor directly appealed Order No. 50 to the Sixth Circuit Court of Appeals. See 28 U.S.C.A. § 1293(b) (Supp.1984).

3. See Adv.Proc. No. 3–84–0015. Rule also named Charles M. Haasl, a first mortgagee of the property in issue, as a defendant. Rule concedes that his lien claim is inferior to the prior mortgage held by Haasl.

4. Rule also asks the court to award him prejudgment interest and costs.

hearing. William Ramsey, an attorney for the debtor, disclosed the controverted records to the court during an in camera hearing.

### III

 The Fifth Amendment protects an individual from compelled self-incrimination; it does not proscribe the disclosure of private information. *Maness v. Meyers,* 419 U.S. 449, 473, 95 S.Ct. 584, 598, 42 L.Ed.2d 575 (1975) (White, J., concurring). The privilege adheres to the person rather than to information which might incriminate. *Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973). With respect to documents, possession or constructive possession by the person asserting the privilege is necessary before the privilege may be invoked. *United States v. Hershenow,* 680 F.2d 847, 856 (1st Cir.1982). If a person entrusts possession of documents to an attorney for the purpose of obtaining legal advice, the documents are nonetheless exempt from production by the attorney where the client himself has a legitimate privilege excusing production. *Fisher v. United States,* 425 U.S. 391, 404–05, 96 S.Ct. 1569, 1577–78, 48 L.Ed.2d 39 (1976).[5]

 The three requisites to the applicability of the privilege are: (1) compulsion, (2) testimonial communication, and (3) the testimonial communication must be self-incriminatory. To assure the protection it is designed to secure, the Fifth Amendment privilege against self-incrimination must be broadly construed. *Arndstein v. McCarthy,* 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 128 (1920). Generally, the privilege extends to any testimony which would furnish a link in the chain of evidence necessary to prosecute. *Blau v. United States,* 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170 (1950); *United States v. Schlansky,* 709 F.2d 1079, 1084 (6th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). Further, a court should deny an assertion of the privilege only if it is perfectly clear after a careful consideration of all the circumstances that compelling testimony cannot possibly have a tendency to incriminate the claimant. *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951).

Less than one month after the entry of Order No. 50, the Supreme Court considered the applicability of the privilege against self-incrimination where business records of a sole proprietorship are involved. *United States v. Doe,* — U.S. —, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). The Court held that, although the contents of the subpoenaed documents at issue were not privileged, the act of producing the documents was within the scope of the privilege.[6] Hence, the controlling inquiry is whether the very act of producing the documents (personal business records) sought by the trustee involves compelled testimonial communication incriminatory to the debtor.

 The act of producing a document, dated August 8, 1982, containing an itemization of work completed at Deere Acres, plus additional information, is innocuous to the extent it describes the work completed and correspondent dollar amounts. Hence, the debtor must furnish the trustee with a copy of the document entitled "Deere Acres Completed Work," provided that any and all information in the document following "BILLED THRU 8/10/82 $1,128,-008.17" shall not be disclosed or included in the copy made available to the trustee.

On September 20, 1984, the trustee filed the deposition of Celia Brewer, who was

---

5. The trustee does not assert that the documents in issue were transferred to the debtor's attorneys for any purpose other than obtaining legal advice.

6. The Court also held that federal courts may not grant use immunity absent compliance with

18 U.S.C.A. §§ 6002 and 6003 (Supp.1984), because Congress has given the Department of Justice exclusive authority to determine whether immunity should be given to a federal witness.

employed between May 1982 and September 1983, by two different entities affiliated with, or controlled by, the debtor.[7] Brewer testified that her primary responsibility was to post checking account transactions to the debtor's cash journal and general ledger. During the course of her employment, in the fall of 1982, Brewer prepared a rough draft of the debtor's accounts on various Rule construction projects. She prepared a separate handwritten statement for each project, listing charges and payments, on either a green four-column accountant's work sheet or a yellow legal-sized ruled paper. Although unable to remember the name of each project, Brewer specifically recalled that she prepared a statement for the Deere Acres project.[8]

The handwritten statements prepared by Brewer are among the documents disclosed to the court in camera. These statements, prepared on four-column accountant's work paper, are within the range of documents described in paragraph 4 of Order No. 50. The act of turning over these statements will not compel incriminating testimonial communication by the debtor. See *United States v. Schlansky*, 709 F.2d 1079 (6th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984) (Fifth Amendment privilege against self-incrimination does not excuse taxpayer's production of accountant's work papers because taxpayer is not compelled to repeat, restate, or affirm truth of contents of documents).

With respect to the remaining documents, it is not perfectly clear that the act of turnover by the debtor would not involve testimonial communication furnishing incriminatory links in a chain of evidence necessary to prosecute.

7. These entities are United American Group and United Management Company.

8. Brewer's deposition recites in part: "I recall the Deere Acres account. There may have been Bull Run Oil, an account. There were a number of accounts, maybe six to ten different projects, possibly more, and I do not recall the names of all of the projects." Deposition of Celia Brewer at 16 (Sept. 17, 1984).