850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anthony Charles DURHAM, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 87-6358.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1988.
 
 Before CORNELIA G. KENNEDY and NATHANIEL R. JONES, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Anthony Charles Durham appeals from the district court's November 17, 1987 amended order denying his motion to vacate sentence pursuant to 28 U.S.C. Sec. 2255. For the following reasons, we affirm the district court's judgment.
 
 I.
 
 2
 Durham's case previously has been before this court on direct appeal. In Durham v. United States, No. 84-5552 (6th Cir. Apr. 1, 1986) (unpublished), we affirmed Durham's convictions of armed bank robbery, possessing, receiving and storing a stolen firearm that was moving in interstate commerce, possession of a firearm with an obliterated serial number, and conspiracy. In that case, we briefly summarized the facts as follows:
 
 
 3
 In the early morning of October 11, 1983, two employees of the Boone State Bank in Florence, Kentucky, were robbed at gunpoint as they prepared to transfer deposits from the night depository to an armored car for delivery to the Bank's nearby branch office. Shortly after the robbery, a police officer observed two men in a green van approach Charles Anthony Durham as he sat parked in his brown van in the parking lot of a Ramada Inn near the scene of the robbery. Durham's van displayed a mural of the south seas, and prominently bore the name, "Polynesian Lady." As the vans pulled away, Durham was arrested. Backup officers recovered the green van, and codefendants David Murphy and Rene Stauffer were later apprehended. Inside Durham's van the police found, among other things, a modified dent puller, similar to the type used to steal two vehicles used in the robbery, an emergency band radio scanner, a listing of police radio frequencies, and two handcuff keys that each fit one to the handcuffs used in the robbery. Inside the green van the police found various items, including a loaded machine gun and several handguns, a Boone State Bank deposit bag and a Boone State Bank envelope containing money, and coveralls and ski masks matching the description of those worn by the robbers. The day after their arrest, Durham, Murphy and Stauffer were indicted on six counts.
 
 
 4
 On the day trial was scheduled to begin, Durham filed a pro se motion to sever his case from that of his codefendants and for the appointment of counsel. He alleged that severance was necessary because multiple representation created a conflict of interest. The trial judge granted Durham's motion, and his case was continued, while the other defendants' trial proceeded.
 
 
 5
 Less than two weeks after the motion to sever was granted, the government returned an 11-count superseding indictment against Durham. Durham filed a motion to dismiss the superseding indictment, alleging prosecutorial vindictiveness. He also filed a motion to sever Count 3 of the superseding indictment which charged him with being a convicted felon in possession of a firearm. Although the court granted the motion to sever Count 3, it denied the motion to dismiss the superseding indictment.
 
 
 6
 After the government had presented its case at trial, Durham moved for judgments of acquittal on all counts. The court granted his motion on Counts 4 through 9, which charged him with interstate transportation of stolen motor vehicles, receipt, concealment and disposal of stolen motor vehicles, possession of a machine gun, not registered to him, and possession of a handgun. The court denied the motion on Count 1, which charged him with a number of conspiracies; Count 2, which charged him with armed bank robbery; Count 10, which charged him with possession of another handgun; and Count 11, which charged with with receipt, concealment and storage of a third handgun. At the conclusion of the evidence, the jury returned guilty verdicts on the four remaining counts.
 
 
 7
 On April 9, 1987, after his conviction was upheld on direct appeal to this court, Durham filed a pro se motion to vacate sentence pursuant to 28 U.S.C. Sec. 2255. The matter was referred to a United States Magistrate for a report and recommendation pursuant to 28 U.S.C. Sec. 636(b)(1)(B). On October 19, 1987, the magistrate issued a report and recommendation which recommended that Durham's motion to vacate sentence be denied. Objections to the magistrate's report and recommendation were filed. The district court adopted the report and recommendation of the magistrate and denied Durham's motion on November 16, 1987. The court entered an amended order on November 17, 1987, which made only a technical correction.
 
 
 8
 This timely appeal followed on November 30, 1987. Durham makes several arguments which may be summarized as follows: (1) He was denied a fair trial and due process; (2) His conviction violates Double Jeopardy; (3) He was denied his right to confront witnesses; and (4) He was denied effective assistance of counsel. This court must decide whether the district court properly denied Durham's motion to vacate sentence.
 
 II.
 
 9
 A proceeding under 28 U.S.C. Sec. 2255 constitutes an independent and collateral inquiry into the validity of a conviction. United States v. Hayman, 342 U.S. 205, 222 (1952). The Supreme Court has consistently held that a collateral action may not do service for an appeal. See e.g., United States v. Addonizio, 442 U.S. 178, 184-85 (1979); Hill v. United States, 368 U.S. 424, 428-29 (1962); Sunal v. Large, 332 U.S. 174, 181-82 (1947). In United States v. Frady, 456 U.S. 152, 166 (1982), the Court "reaffirmed the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."
 
 
 10
 In Frady, the specific question concerned whether certain jury instructions were defective. Id. at 162. Frady, however, had not contemporaneously objected to the instructions nor had he raised the issue on direct appeal. Id. The Supreme Court determined the proper standard of review as follows:
 
 
 11
 We believe the proper standard for review of Frady's motion is the "cause and actual prejudice" standard enunciated in Davis v. United States, 411 U.S. 233 (1973), and later confirmed and extended in Francis v. Henderson, 425 U.S. 536 (1976), and Wainwright v. Sykes, 433 U.S. 72 (1977). Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.
 
 
 12
 Id. at 167-68.
 
 
 13
 The Court found it unnecessary to determine whether Frady had shown cause for failing to object at trial because Frady had suffered no actual prejudice of a degree sufficient to justify collateral relief. Id. at 168.
 
 
 14
 Although Frady and the cases cited therein focus on the petitioner's failure to contemporaneously object to the alleged errors, Wainwright v. Sykes' cause and prejudice standard has subsequently been applied to 28 U.S.C. Sec. 2254 proceedings in which the failure to raise an issue on direct appeal constituted procedural default. Reed v. Ross, 468 U.S. 1, 10-11 (1984). While the Court's holding in Reed v. Ross was based in part on considerations of comity, it was also based on considerations of the accurate and efficient administration of justice and finality. Id. We believe that these latter considerations are equally present in section 2255 proceedings. Accordingly, we will apply the cause and prejudice standard to issues which could have been raised on direct appeal.
 
 
 15
 In the instant case, although Durham contemporaneously objected to certain of the errors alleged in his section 2255 petition, none of the errors were raised in his direct appeal before this court. Therefore, petitioner must meet the cause and prejudice standard set forth in Frady.
 
 A.
 
 16
 Durham first argues that he was denied a fair and impartial trial and due process of law in several ways. Specifically, he challenges his indictment because although two counts charging him with possession of a machine gun not registered to him and possession of a handgun had been dismissed the district court did not delete from the conspiracy count references to the machine gun and possibly did not delete the word "armed." Most references to the dismissed counts were redacted. These remaining references appear to have been oversights in the district court's redaction of the indictment.
 
 
 17
 Durham can show no prejudice from the references in the conspiracy count of his indictment to the words "armed" and "machine gun." The jury was aware that certain of the substantive weapons charges had been disposed of by the district court. Additionally, the inability to convict on a substantive count does not generally bar conviction for conspiracy. See e.g., United States v. Tombrello, 666 F.2d 485, cert. denied, 456 U.S. 994 (11th Cir.1982) (holding that illegal conspiracy is complete regardless of whether the crime agreed upon is actually consumated, and that the defendant could be convicted of conspiracy even though he is acquitted of the substantive offense). Thus, Durham could have agreed to use a machine gun for the purposes of the conspiracy count even though the district court held that he had not completed the substantive offense of possession of an unregistered machine gun not registered to him. Finally, we cannot see how Durham could have been prejudiced by the word "armed" in the conspiracy count since the armed robbery count went to the jury and resulted in a conviction.[1]
 
 
 18
 Durham also argues that the district court erred in using the word "armed" in its instruction to the jury on the conspiracy count. The district court had instructed the jury that Durham was charged in count one, inter alia, with conspiracy to commit armed robbery. For the same reason that Durham could not have been prejudiced by the word "armed" in the conspiracy count of the indictment, he could not have been prejudiced by the word "armed" in the jury instruction.
 
 
 19
 Durham also argues that he was denied a fair trial and due process by the prosecution's comment during closing argument that Durham was the "mastermind." Durham's counsel contemporaneously objected to this statement. The objection was overruled, but the district court admonished the jury that the prosecutor's characterization was a suggestion of how they should interpret the evidence and that they could accept it for whatever it was worth. Particularly in light of the district court's admonishment to the jury, we can see no way that Durham could have been prejudiced by this statement since the prosecutor may argue for his preferred interpretation of the evidence in his closing argument.[2]
 
 
 20
 Durham also argues that he was denied a fair trial and due process by the prosecution's attempt to introduce certain photographs of codefendant Murphy's van parked in front of Durham's house in 1981 which were identified by a police officer at trial.[3] Durham's counsel objected to this evidence on the ground that the jury would infer that Durham and codefendant Murphy had engaged in prior criminal activity and moved for a mistrial. The district court sustained the objection on grounds of relevance, but denied the motion for a mistrial. Durham has not shown that he was prejudiced by the district court's handling of this matter. We note that the photograph involved here was not a mug shot. C.F., Eberhardt v. Bordenkircher, 605 F.2d 275, 280 (6th Cir.1979) (commenting that the use of mug shots in federal trials has been strongly condemned as effectively eliminating the presumption of innocence). Additionally, Durham testified at trial that he had known codefendant Murphy for ten years.
 
 B.
 
 21
 Durham also argues that he was denied his privilege against self-incrimination by the prosecution's calling attention to his silence at the time of his arrest. A Federal Bureau of Investigation (FBI) agent testified that just after Durham's arrest the FBI agent asked Durham to answer a few questions, and Durham responded by asking if he were under arrest. Durham apparently already had been given a Miranda warning prior to the FBI agent's attempt at questioning. Durham's counsel objected to the FBI agent's reference to Durham's post-arrest silence. The district court sustained the objection, admonished the jury not to consider the testimony, and struck the reference to Durham's post arrest silence from the record. His counsel requested a mistrial, but this request was denied. Durham has not shown that he was prejudiced by the district court's handling of this vague reference to his post-arrest silence. The district court's acts of striking the testimony from the record and admonishing the jury were sufficient to dispel any prejudice to Durham.
 
 C.
 
 22
 Durham next argues that his conviction violates double jeopardy because the same weapons were referred to in all of the charges of which he was convicted. This argument is premised on a fundamental misunderstanding of the law on double jeopardy. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). Durham does not show that he was prejudiced by an erroneous application of the Blockburger test in his case.
 
 D.
 
 23
 Durham next argues that he was denied his right to confront witnesses in several ways. Specifically, he argues that he was improperly precluded from attending his pretrial hearing. Durham does not even attempt to explain nor can we ascertain in what way he was prejudiced by his absence. See Peterson v. United States, 411 F.2d 1074 (8th Cir.) (holding that the defendant was not prejudiced by his absence from a pretrial hearing, especially when no objection was made by the defendant's counsel), cert. denied, 396 U.S. 920 (1969).
 
 
 24
 Durham also argues that he was denied his right to confront his alleged coconspirators. His alleged coconspirators, however, did not testify at his trial. Durham's counsel's stipulation that the coconspirators would assert the fifth amendment if they were called to testify, did not prejudice Durham.
 
 
 25
 Furthermore, although a police officer testified concerning a conversation between Durham and his alleged coconspirators he was instructed to omit the statements of the coconspirators. When the police officer related a "no" response given by the coconspirators to a question reportedly asked of them by Durham,[4] Durham's counsel objected. The district court admonished the jury to consider any statements reportedly made by the coconspirators only insofar as they put Durham's statements in context. Durham does not explain nor can we see in what way he was prejudiced by the district court's handling of this matter.
 
 E.
 
 26
 Finally, Durham argues that he was denied effective assistance of counsel because his counsel of choice withdrew before trial. As we have noted above, supra page 2, Durham filed a pro se motion to sever his case from that of his codefendants and for appointment of counsel. In this motion he alleged that severance was necessary because multiple representation created a conflict of interest. The record shows that on February 2, 1984, after Durham's motion to sever his trial from that of his codefendants was granted Durham's privately retained attorney filed a verified motion for leave to withdraw as counsel of record. The district court granted this motion on the next day. On February 17, 1984, a public defender was appointed by the district court to defend Durham. The record does not disclose that Attorney Marcus was coerced into withdrawal from this case. Nor does the record disclose that Durham was prejudiced by his absence.
 
 
 27
 For the foregoing reasons, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 Durham's apparent fear that, similar to the charge of robbery, the charge of conspiracy was enhanced by the use of the word "armed" in the indictment is unfounded. The word "armed" in the conspiracy count of the indictment does not enhance this offense
 
 
 [2]
 Similarly, Durham was not prejudiced by the prosecution's statement in closing argument that he did not think Durham hesitated to use his family. Upon objection, the prosecutor stated that the jury could conclude from the evidence that Durham used his family
 
 
 [3]
 Durham also argues that this alleged error violates his privilege against self-incrimination. However, the fifth amendment privilege adheres to the person rather than to information which might incriminate him. United States v. Schlansky, 709 F.2d 1079, 1082 (6th Cir.1983), cert. denied, 465 U.S. 1099 (1984)
 
 
 [4]
 The question concerned whether the coconspirators were carrying their wallets